# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2232

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Cory Baker Kamerud, | * |
| | * |
| Appellant. | * |

_____

No. 02-2427

_____

Appeals from the United States
District Court for the
Northern District of Iowa.

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Brett Christian Kamerud, | * |
| | * |
| Appellant. | * |

_____

Submitted: February 12, 2003

Filed: April 23, 2003

_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and BYE, Circuit Judges.
_____

BYE, Circuit Judge.

A jury found Cory and Brett Kamerud guilty of conspiring to distribute and possessing with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. The jury also found one of the objects of the conspiracy was to possess the methamphetamine with the intent to distribute it to one or more persons under twenty-one years of age in violation of 21 U.S.C. § 859. The district court[1] sentenced each to 240 months imprisonment, to be followed by ten years of supervised release. Both Cory and Brett appeal, challenging the sufficiency of the evidence and raising several other pre-trial, trial, and sentencing issues. We affirm the judgments of conviction and sentences in all respects.

I

We review the evidence in the light most favorable to the verdict and accept all reasonable inferences as established. United States v. Jimenez-Villasenor, 270 F.3d 554, 558 (8th Cir. 2001). In June and August 2000, the Kameruds and two other individuals, Russell Brick and Stacey Bitz, trafficked methamphetamine from Sioux City, Iowa, to Aberdeen, South Dakota. On about twelve occasions, the group got methamphetamine in Sioux City from a supplier named Kurt Undine, then traveled back to Aberdeen to redistribute some of the methamphetamine and consume some of it. Although the Kameruds did not personally make the trip each time, they always contributed some of the money for each of the purchases Brick ultimately made from

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Northern District of Iowa, presiding at trial. The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa, presiding at sentencing.

Undine. In all, the group purchased between 680 and 850 grams of methamphetamine, or between 2 and 2½ ounces on each trip. When the methamphetamine reached Aberdeen, the Kameruds would weigh out portions of their purchases for resale before consuming some of the drugs themselves.

II

Citing United States v. Jensen, 141 F.3d 830 (8th Cir. 1998), and United States v. West, 15 F.3d 119 (8th Cir. 1994), the Kameruds contend the evidence was insufficient to show they conspired to distribute methamphetamine. They argue the evidence merely showed they were drug users who had a buyer/seller relationship with Russell Brick, and their resale of drugs was not pursuant to any agreement with Brick but merely a means to finance their own personal use. We disagree.

The government was not required to show an express agreement between the Kameruds and their seller regarding the subsequent redistribution of the drug — proof of a tacit understanding was sufficient. E.g., United States v. Crossland, 301 F.3d 907, 913 (8th Cir. 2002). Unlike Jensen, where the alleged conspirator/seller did not know of or agree with his buyer's plan to resell a personal use amount of amphetamine to a third person, 141 F.3d at 833, Brick personally saw the Kameruds weighing out grams for resale before consuming any of the drugs themselves. Unlike West, where the evidence established only that an alleged conspirator/seller made sales of small quantities intended for the personal use of two buyers who did not know one another, 15 F.3d at 120-21, Brick knew the Kameruds were redistributing the drugs, and frequently observed customers coming and going from the Kameruds' residence.

The Kameruds also claim the evidence was insufficient to prove the conspiracy involved 500 grams or more of methamphetamine, arguing the amount they consumed personally should not be included in the total. The Kameruds were

charged with conspiracy to distribute methamphetamine, however, not possession with intent to distribute, so the amount consumed for personal use should be included in the total. Compare Jimenez-Villasenor, 270 F.3d at 562 (holding that drugs acquired for personal use should be included in determining drug quantity when charge is for conspiracy) with United States v. Fraser, 243 F.3d 473, 475-76 (8th Cir. 2001) (holding drugs acquired for personal use are not relevant conduct when charge is for possession with intent to distribute).

Brett further contends Apprendi v. New Jersey, 530 U.S. 466 (2000), requires us to distinguish between a district court's inclusion of personal use amounts as relevant conduct for sentencing purposes, and the inclusion of personal use amounts in the proof submitted to a jury when asking them to find a conspiracy to distribute a specific amount of a controlled substance. We need not address that argument in this case, however, because there was no Apprendi error. The Kameruds both received 240 month sentences, which are within the prescribed statutory maximum even if the jury had not been asked to find a specific drug quantity. See United States v. Aguayo-Delgado, 220 F.3d 926, 934 (8th Cir. 2000) (explaining no Apprendi error occurs when a sentence is within the statutory maximum of 20 years authorized by 21 U.S.C. § 841(b)(1)(C) without reference to drug quantity).

III

The Kameruds raise numerous other pre-trial, trial, and sentencing issues, all of which we review for plain error because the Kameruds did not raise or preserve the claims in the district court. Under the plain error standard, we will only reverse obvious errors which affect a defendant's substantial rights and seriously affect the fairness, integrity, or public reputation of judicial proceedings. United States v. Evans, 272 F.3d 1069, 1080 (8th Cir. 2001), cert. denied, 535 U.S. 1029 (2002), and cert. denied, 535 U.S. 1072 (2002), and cert. denied sub nom. Roberts v. United States, 535 U.S. 1087 (2002), and cert. denied, __ U.S. __, 123 S.Ct. 221 (2002).

-4-

Together, Cory and Brett contend the government failed to charge multiple conspiracies even though the evidence proved two separate conspiracies, one involving the events of the summer of 2000, and a second involving events which occurred in 2001. Even if we assume the Kameruds' contention is true, there is no plain error. The Kameruds did not request a jury instruction on multiple conspiracies, and cannot show any prejudice because, if there were two conspiracies, the Kameruds were parties to both. See United States v. Zimmerman, 832 F.2d 454, 457 n.2 (8th Cir. 1987) (rejecting a claim of prejudice where proof of multiple conspiracies varied from indictment charging single conspiracy, but evidence showed defendant was a party to each conspiracy).

Separately, Cory makes five claims. First, he contends the original indictment and superseding indictment[2] filed against him were defective because they recited a statutory penalty provision which required proof of just 50 grams or more of a mixture or substance containing methamphetamine (21 U.S.C. § 841(b)(1)(B)), even though he was charged with a conspiracy involving 500 grams or more (the amount required for a violation of 21 U.S.C. § 841(b)(1)(A)). No plain error occurred. The government necessarily proved a violation of § 841(b)(1)(B) by proving the greater amount required under § 841(b)(1)(A), and the 240 month sentence Cory received fell within the statutory maximum allowed under § 841(b)(1)(B), the penalty provision actually recited in the indictments. In other words, Cory can show no prejudice resulting from the government, in essence, "over-proving" a violation of § 841(b)(1)(B).

Second, Cory claims the government was required to renew its intent to seek an enhanced sentence under 21 U.S.C. § 851 after filing the superseding indictment.

---

[2]The superseding indictment enlarged the period of the conspiracy by one year, and added as an objective of the conspiracy the distribution or intent to distribute to a person under the age of twenty-one in violation of 21 U.S.C. § 859.

Cory also claims he was unaware of the original § 851 notice because it was provided to his attorney, not to him personally. Neither claim has merit. By its own terms, the statute permits notice to be served upon defense counsel. See 21 U.S.C. § 851 (a)(1) ("No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person *or counsel for the person*) stating in writing the previous convictions to be relied upon.") (emphasis added). Furthermore, the government is not required to refile a notice of enhanced sentence under 21 U.S.C. § 851 after the return of a superseding indictment. United States v. Wright, 932 F.2d 868, 882 (10th Cir. 1991).

Third, Cory claims a violation of the Speedy Trial Act, 18 U.S.C. § 3161(c)(2),[3] because his trial commenced the same day he was arraigned on the superseding indictment and he did not have 30 days to prepare for trial. The Speedy Trial Act does not require that the 30-day trial preparation period be restarted upon the filing of a superseding indictment. United States v. Rojas-Contreras, 474 U.S. 231, 234 (1985). The district court has discretion to grant a continuance upon the filing of a superseding indictment but "is not bound to exercise its broad discretion to grant a continuance unless the defendant would be prejudiced by a lack of time to prepare a defense to the charges in the superseding indictment." United States v. Punelli, 892 F.2d 1364, 1369 (8th Cir. 1990). Since Cory did not request a continuance, and has failed to demonstrate how his counsel was unprepared at trial, the district court did not plainly err in proceeding to trial immediately following the arraignment on the superseding indictment. See United States v. Maynie, 257 F.3d 908, 915 (8th Cir.

---

[3] 18 U.S.C. § 3161(c)(2) provides that "[u]nless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se."

2001) (holding district court did not abuse its discretion in proceeding to trial immediately following the arraignment on superseding indictment where neither defendant or his counsel complained the last minute arraignment prejudiced the defense in any manner), cert. denied sub nom. Logan v. United States, 534 U.S. 1151 (2002), and cert. denied, 535 U.S. 944 (2002).

Fourth, Cory argues the government violated the Jencks Act, 18 U.S.C. § 3500,[4] by not disclosing the grand jury transcript of a trial witness, Officer Boone. After trial, a magistrate judge[5] conducted an in camera review of the transcript of Officer Boone's grand jury testimony, and determined the transcript was not covered by the Jencks Act because the officer's grand jury testimony did not relate to the subject matter of his trial testimony. Although Cory never appealed that ruling, out of an abundance of caution we reviewed the grand jury transcript and agree it contains no statements by Officer Boone which relate to the subject matter of his trial testimony. Cory further contends, however, that the grand jury transcript should be "fair game" under the Jencks Act so long as anyone whose testimony Office Boone summarized to the grand jury testified at trial. We disagree. "[T]he Constitution does not prohibit the use of hearsay testimony in grand jury proceedings," United States v. Hintzman, 806 F.2d 840, 843 (8th Cir. 1986), and the Jencks Act only required disclosure of the grand jury transcript if it contained statements by Officer Boone that related to the subject matter of his own trial testimony, not some other witness's trial testimony.

---

[4] 18 U.S.C. § 3500(b) provides in relevant part that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."

[5]The Honorable Paul A. Zoss, United States Magistrate Judge for the Northern District of Iowa.

-7-

Finally, Cory contends a jury instruction was inconsistent with the verdict form. Jury Instruction #8 indicated the first element of the crime of conspiracy was that "two or more persons reached an agreement or come [sic] to an understanding to distribute *and* possess with intent to distribute, *and* distribute *and* possess with intent to distribute methamphetamine to one or more persons under twenty-one years of age." (Emphasis added). The verdict form instructed the jury to answer the following question:

The defendant is guilty of conspiracy to

___    Distribute methamphetamine

___    Possess with intent to distribute methamphetamine

___    Distribute methamphetamine to one or more persons under twenty-one years of age

___    Possess with intent to distribute methamphetamine to one or more persons under twenty-one years of age.

The jury checked the first, second, and fourth objects of the conspiracy, but did not check the third one (i.e., distribution to someone under twenty-one). Cory contends the jury did not understand the instructions, and therefore did not give each charge separate consideration, because Instruction #8 required *all* objects of the conspiracy to be found as part of one element of the crime of conspiracy, but the jury found an agreement as to just three of the four objects of the conspiracy.

To the extent Instruction #8 required all objects of the conspiracy to be proven as one element of the crime of conspiracy, it was incorrect. Although all elements of a conspiracy must be proven to find a defendant guilty, all objects of the conspiracy need not be proven. See United States v. Mohr, 728 F.2d 1132, 1135 (8th Cir. 1984)

("Where a statute specifies two or more ways in which an offense may be committed, however, all may be alleged in the conjunctive in one count of the indictment, and proof of any one of the acts conjunctively charged may establish guilt"). Here, the government proved the first element of a conspiracy by proving the existence of an agreement to accomplish one or more objects of the conspiracy. The jury unanimously agreed on three of the four objects of the conspiracy, even though proof of just one of the four would have been sufficient to support the conviction.

Cory failed to object to Instruction #8, perhaps because it favored him if the jury would have been confused into believing the government had to prove all objects of the conspiracy to satisfy the first element of the crime of conspiracy. Nevertheless, his failure to object subjects this claim to plain error review, and we find no plain error. The very fact the jury separately considered each of the objects of the conspiracy, and unanimously agreed on three of the four, satisfies us that the jury applied the law correctly and was not confused by the instruction.

Brett also makes several of his own claims. First, he argues the district court plainly erred by failing to instruct the jury with Eighth Circuit Pattern Jury Instruction 506F, entitled "Conspiracy: Multiple Offenses."[6] Brett argues the failure to use this particular instruction meant the jury did not understand it must unanimously agree upon one or more objects of the conspiracy to find him guilty. As we stated above,

_____

[6]The pattern instruction provides as follows:

The indictment charges a conspiracy to commit [two] [three, etc] separate offenses. It is not necessary for the Government to prove a conspiracy to commit [both] [all] of those offenses. It would be sufficient if the Government proves, beyond a reasonable doubt, a conspiracy to commit one of those offenses; but in that event, in order to return a verdict of guilty, you must unanimously agree upon which of the [two] [three, etc] offenses was the subject of the conspiracy. If you cannot agree in that matter, you must find the defendant not guilty.

however, we are confident the jury fully understood they were required to unanimously find one or more of the objects of the conspiracy present before finding Brett guilty, because the verdict form shows the jury separately considered all four of the possible objects of the conspiracy, and did not unanimously agree upon one of the four. Furthermore, the district court gave a general unanimity instruction which provided "[y]ou should try to reach an agreement if you can do so without violence to individual judgment, because a verdict – whether guilty or not guilty – must be unanimous." Under plain error review, we conclude the general unanimity instruction was sufficient to protect Brett's constitutional rights. See United States v. Gruenberg, 989 F.2d 971, 975 (8th Cir. 1993) ("A general unanimity instruction usually protects a defendant's sixth amendment right to a unanimous verdict.") (quoting United States v. Montanye, 962 F.2d 1332, 1341 (8th Cir. 1992)).

Next, Brett contends the prosecutor committed misconduct by improperly vouching for the credibility of the government's cooperating witnesses, misrepresenting to the jury the extent of the charging and sentencing deals offered to two cooperating witnesses, interfering with Brett's right to present evidence, and failing to provide a transcript of Officer Boone's grand jury testimony. We reject each of these claims.

The prosecutor did not improperly vouch for the government's cooperating witnesses merely by asking them about the plea agreements they had reached with the government, part of which included the government's agreement to move for downward departures on their sentences in exchange for truthful testimony. See United States v. Tulk, 171 F.3d 596, 600 (8th Cir. 1999) (questioning witnesses about "the existence of a plea agreement, its terms, and a witness' understanding of the agreement is not improper [and does] not suggest that the government had independently verified the testimony or that acceptance of the agreement implied that the proposed testimony was accurate.").

Neither did the prosecutor commit misconduct by asking Russell Brick and Stacey Bitz about the potential sentences they faced if they had decided not to cooperate. First, the questions called only for each witness's understanding of the potential sentences they faced, not the actual sentences each may have faced. Second, there is no indication the responses given by either Brick or Bitz were inaccurate. Finally, if Brett thought there was something to gain from trying to establish these two witnesses faced even stiffer sentences because of their prior criminal histories, each of the witnesses was subject to cross-examination in that regard.

The prosecutor did not interfere with Brett's ability to call a witness by threatening the witness with prosecution if he testified for the defense. The prosecutor merely informed the district court there was a possibility, based on the government's investigation, that the witness may be exposed to criminal liability for his involvement with the Kameruds, and inquired of the court whether the witness had been afforded a chance to consult with an attorney about his Fifth Amendment privilege against self-incrimination prior to testifying. The prosecutor suggested the witness should have the opportunity to consult with an attorney prior to testifying. The district court agreed, and asked the public defender to consult with the witness. After consultation, the witness decided not to testify. This sequence of events does not suggest any prosecutorial misconduct.

Finally, the prosecutor did not commit misconduct by failing to disclose Officer Boone's grand jury transcript because, as we explained above, the transcript was not subject to the Jencks Act.

Brett also claims he did not waive, on the record, the right to testify in his own behalf, and that such a waiver may not be presumed from a silent record. We find no plain error because "if an accused desires to exercise [his] constitutional right to testify the accused must act affirmatively and express to the court [his] desire to do so at the appropriate time or a knowing and voluntary waiver of the right is deemed

-11-

to have occurred." United States v. Blum, 65 F.3d 1436, 1444 (8th Cir. 1995) (citing United States v. Bernloehr, 833 F.2d 749, 752 (8th Cir.1987)).

Lastly, Brett submits the district court plainly erred by sentencing him to a ten-year term of supervised release. Brett's contention is based upon a misperception that he was only subject to a five-year term of supervised release. He claims the ten-year term was imposed pursuant to 21 U.S.C. § 859, which provides a person "who violates section 841(a)(1) of this title by distributing a controlled substance to a person under twenty-one years of age is . . . subject to . . . at least twice any term of supervised release authorized by section 841(b)." Brett argues the jury rejected distribution to a minor as one of the objects of the conspiracy, and thus it was improper to double his term of supervised release pursuant to 21 U.S.C. § 859.

Brett's term of supervised release was permissible without any reference to or reliance upon 21 U.S.C. § 859. Brett had a prior felony drug conviction which enhanced his sentence under 21 U.S.C. § 841. In such a case, § 841(b)(1)(C), the subsection that applies even in the absence of a drug quantity finding by the jury, "permits the imposition of any amount of supervised release between six years and life." Aguayo-Delgado, 220 F.3d at 933.

IV

We affirm the judgments of conviction and sentences in all respects.[7]

_____

[7]We decline to discuss the three ineffective assistance of counsel claims raised by Cory in this direct appeal, because those are more appropriately addressed in a motion brought under 28 U.S.C. § 2255. See United States v. Soriano-Hernandez, 310 F.3d 1099, 1105 & n.9 (8th Cir. 2002) (explaining that claims of ineffective assistance should only be considered on direct appeal in exceptional cases where district court has already fully developed the evidentiary record on the ineffectiveness claim).

-12-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.