# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3731

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Steven Hart, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 16, 2004
Filed: February 10, 2005

_____

Before WOLLMAN, RICHARD S. ARNOLD,[1] and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Steven Hart contends the district court[2] should have compelled the government to move for a reduction in Hart's sentence pursuant to United States Sentencing Guideline (U.S.S.G.) § 5K1.1. We disagree and affirm.

---

[1]The Honorable Richard S. Arnold died on September 23, 2004. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E.

[2]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

# I

This income tax evasion case is before us for a second time. We discussed the underlying facts at length in our first opinion, see United States v. Hart, 324 F.3d 575, 576-78 (8th Cir. 2003), and will not repeat them here. The issue in this appeal concerns the events that occurred after we reversed Hart's original sentence of twenty-one months and remanded for resentencing.

After succeeding in part in his first appeal, Hart realized his new guideline range would put him close to eligibility for probation, community confinement, or home detention. Thus, before the resentencing hearing, Hart's attorney approached the government to see if Hart could provide some information which would result in the government recommending enough of a sentence reduction under § 5K1.1 to make Hart eligible for probation or home detention. The government had originally sought Hart's substantial assistance shortly after he was indicted in April 2001, but he declined to cooperate at that time.

For three months, both Hart and the government moved for continuances of the resentencing date in order to give Hart a chance to provide information that might warrant a reduction for substantial assistance. The resentencing hearing was ultimately set for September 16, 2003.

When Hart met with authorities, he provided the names of two individuals he maintained were involved in the drug trade. The government investigated the information and determined it was of no value to them. Hart was informed a § 5K1.1 motion would not be filed based on the information he had provided. In a last-ditch effort, Hart's attorney contacted the government approximately one week before the September 16 resentencing hearing, and asked if there was anything Hart could do to qualify for a § 5K1.1 motion. The Assistant United States Attorney (AUSA) handling

the case purportedly told Hart's counsel the "5K" would depend on "the setting up of some type of sting or buy/bust arrangement."

Hart apparently then set out in earnest to find some information he could relay to the government. He made many phone calls to acquaintances he had formed while conducting a bail bond service. He learned from one acquaintance, Chris Taylor, that a former St. Louis deputy sheriff would have two ounces of heroin at his house on Friday, September 12. Hart's counsel relayed this information to the AUSA without revealing Taylor as the source of the information. The AUSA in turn relayed the information to a Drug Enforcement Administration (DEA) agent.

On Friday, September 12, Hart and Taylor set up surveillance outside the deputy sheriff's residence to see if law enforcement would act on the tip. Hart constantly called his attorney to keep him posted. As of 11:00 PM, no law enforcement activity had taken place, and Hart's attorney called the AUSA advising him "nothing has taken place" and expressing the hope "we can pick this matter up on Monday [September 15]."

The DEA agent called Hart's attorney Monday morning and purportedly assured him he would do everything he could to provide a law enforcement presence at the deputy sheriff's residence that Monday. The AUSA called Hart's attorney late Monday evening to advise that law enforcement did in fact investigate the premises, there was a scuffle or chase between police officers and the suspect, but the suspect beat the officers "to the toilet" and no drugs were seized.

The next day, at the resentencing hearing, the government would not file a § 5K1.1 motion on Hart's behalf. The district court sentenced Hart to eighteen months imprisonment. On September 24, 2003, Hart filed a motion to compel the government to file a substantial assistance motion. He alleged he had arranged a "sting/buy-bust" enforcement action following substantial negotiations with the

government, but despite his "substantial assistance" and "good faith effort" the government would not file a § 5K1.1 motion. He further requested an evidentiary hearing for the purpose of making the threshold showing that the government's refusal to file the motion was in bad faith.

The government resisted the motion, explaining the tip Hart had relayed to the government through his attorney regarding the two ounces of heroin had no value to the government because the suspect consented to a search of his residence, and the search revealed nothing related to narcotics trafficking. In other words, the government took the position the assistance provided by Hart was not "substantial" for purposes of a § 5K1.1 motion.

On October 28, 2003, the district court held an evidentiary hearing. Hart's attorney was the only person who testified. He essentially testified to the facts outlined above. In addition, he claimed the decision not to file the § 5K1.1 motion was made by a supervising AUSA on the belief Hart was at one point a large-scale drug trafficker, and in his opinion the tip Hart provided was the bare minimum Hart thought he could provide and still qualify for a § 5K1.1 motion, and Hart did not "provide the big fish name" the government apparently wanted.

Following the hearing, the district court denied Hart's motion to compel. The district court assumed the truth of Hart's attorney's testimony, but held Hart still failed to show he rendered substantial assistance. Hart then filed this timely appeal.

II

"A district court can review the government's decision not to file a substantial assistance motion only if a defendant has made a substantial threshold showing that the decision was based on an unconstitutional motive or was not rationally related to any legitimate Government end, such as when its decision was made in bad faith."

-4-

United States v. McClure, 338 F.3d 847, 850 (8th Cir. 2003) (internal citations and quotations omitted). We review the denial of a motion to compel for abuse of discretion. Id.

Hart first contends he made a threshold showing that the government's refusal to file the § 5K1.1 motion was in bad faith, and thus the district court abused its discretion when it refused to compel the government to file the motion. We disagree. It is rational for the government to refuse to file a § 5K1.1 motion when the assistance provided by a defendant is not substantial. As the government notes, the information Hart provided did not result in the seizure of any drugs, any arrests, or otherwise further any governmental investigative or prosecutorial interest. Thus, the district court did not abuse its discretion in determining Hart did not provide substantial assistance.

Second, Hart contends the government made an unconditional promise to file a § 5K1.1 motion when the AUSA represented the "5K" depended on Hart's ability to set up "some type of sting or buy/bust arrangement." Normally, the government retains the discretion to determine whether a defendant's assistance is "substantial" enough to warrant a § 5K1.1 motion, but we have recognized instances where the government makes an "unambiguous, unconditional promise to file a downward departure motion" which fails to reserve that discretion. United States v. Barresse, 115 F.3d 610, 612 (8th Cir. 1997). In such a case, the agreement to file a motion "is binding on the government." Id. Hart contends this is such a situation, and the government was therefore bound to file the § 5K1.1 motion after he provided his third-party tip to law enforcement. Because Hart failed to make this argument in the district court, we review this claim for plain error only. United States v. Kamerud, 326 F.3d 1008, 1013 (8th Cir. 2003). "Under the plain error standard, we will only reverse obvious errors which affect a defendant's substantial rights and seriously affect the fairness, integrity, or public reputation of judicial proceedings." Id.

We find no error here, let alone plain error, for two reasons. First, this case is unlike <u>Baresse</u> because the AUSA's alleged oral promise to file a § 5K1.1 motion was not made as part of the inducement to plead guilty. Hart had already pleaded guilty without entering into any agreement to cooperate with the government – the alleged oral promise was made between the time of sentencing and resentencing. <u>Baresse</u> held if an unconditional promise "was part of the inducement or consideration underlying a guilty plea, its breach will entitle defendant to relief." 115 F.3d at 612. Here, the alleged oral agreement was not part of the inducement or consideration underlying the guilty plea.

Second, assuming *arguendo* Hart presented sufficient evidence of an enforceable agreement (we have our doubts), Hart did not fulfill his end of the bargain. The alleged agreement required Hart to set up "some type of sting or buy/bust arrangement." Hart merely told authorities he had a tip from a third party regarding the possible presence of two ounces of heroin in someone's residence. Such a tip does not constitute the arrangement of a "buy/bust," nor does it constitute "some type of sting."

### III

For the reasons discussed, we conclude the district court did not abuse its discretion when it refused to compel the government to file a motion for a sentence reduction under § 5K1.1.

_____