# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2086

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Tyler M. Leach, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 14, 2009
Filed: April 13, 2009

_____

Before MURPHY and SMITH, Circuit Judges, and LIMBAUGH, District Judge.[1]

_____

SMITH, Circuit Judge.

Tyler M. Leach, after entering into a written plea agreement with the government, pleaded guilty to knowingly using a facility of interstate commerce to attempt to entice a minor into engaging in illegal sexual conduct, in violation of 18 U.S.C. § 2422(b). During resentencing,[2] the district court[3] sentenced Leach to 120

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]In *United States v. Leach*, this court vacated Leach's 72-month sentence, holding that the district court failed to apply U.S.S.G. § 4B1.5 to his offense of conviction. 491 F.3d 858, 868 (8th Cir. 2007). On remand, Leach faced an advisory

months' imprisonment. Leach appeals, arguing that the government breached a "possible oral agreement" to recommend the low end of the Guidelines range at sentencing. According to Leach, the government's request for a sentence at the high end of the Guidelines range breached its negotiated duty under the plea agreement. Thus, he contends that he should be relieved from his reciprocal duty not to seek a sentence below the Guidelines range and have the opportunity on remand to ask for a sentence below ten years' imprisonment. We affirm.

## I. *Background*

The government charged Leach in a three-count indictment with knowingly using a facility of interstate commerce to attempt to entice a minor into engaging in illegal sexual conduct, in violation of 18 U.S.C. § 2422(b) ("Count One"); traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with another person, in violation of 18 U.S.C. § 2423(b) ("Count Two"); and criminal forfeiture, pursuant to 18 U.S.C. § 2253 ("Count Three"). Leach entered into a plea agreement, pleading guilty to Count One in return for the government dropping Count Two and Count Three. In the plea agreement, Leach acknowledged that he was subject to a five-year minimum sentence and a 60-year maximum sentence under 18 U.S.C. § 2426(a) because his "offense occurred after [Leach] had a prior sex offense conviction."

Relevant to the present appeal, ¶ 10(h) of the plea agreement provided that

> the United States agrees not to seek an upward departure from the Guidelines or a sentence outside the Guidelines range, and defendant agrees to not seek a downward departure from the Guidelines or a sentence outside the Guidelines range. The agreement by the parties to

Guidelines range of 168 to 210 months' imprisonment.

[3]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

not seek a departure from the Guidelines is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable" . . . .

Additionally, ¶ 11 of the plea agreement specified that both Leach and the government acknowledged and agreed "that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing."

In ¶ 15 of the plea agreement, Leach waived his appellate and post-conviction rights. In ¶ 19, Leach affirmed that "no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty." Finally, ¶ 20 provided:

> No Undisclosed Terms. The United States and defendant acknowledge and agree that the above-stated terms and conditions constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

At the change-of-plea hearing, Leach reaffirmed that there were no promises "other than the Plea Agreement itself" that caused him to plead guilty. At his original sentencing, the district court asked the government whether it was seeking a sentence in excess of 63 months—the top of what the district court believed was Leach's Guidelines range. In response, the government stated, "I believe [the government's] oral agreement with Mr. Moss [Leach's attorney] if not in writing somewhere along the line was to offer the bottom of the guideline range . . . after the final calculation." The government argued that the correct Guidelines range was 168 to 210 months'

imprisonment pursuant to U.S.S.G. § 4B1.5(a), but the district court refused to apply the enhancement, finding that 60 to 63 months' imprisonment was the applicable Guidelines range. The government objected to the district court's ruling that the enhancement did not apply. The government then made three separate sentencing recommendations based on the three Guidelines ranges that might potentially have applied to Leach, each time recommending a sentence at the low end of the Guidelines range. In conjunction with these recommendations, the government stated:

> Because the Court has ruled against the Government on both of these enhancements, we are left with, as already noted, the range of 60 to 63 months. And while there has been some discussion on the record and just with Mr. Moss on whether the Government orally agreed to recommend the bottom of the guideline range, essentially [neither][4] Mr. Moss [n]or the Government can remember if there was an oral agreement to that.

The district court sentenced Leach to 72 months' imprisonment. The government appealed, contending that the district court erred in not applying § 4B1.5(a) or, in the alternative, § 4B1.5(b). *Leach*, 491 F.3d at 859. After holding that § 4B1.5(a) applied to Leach, this court vacated Leach's sentence and remanded for resentencing. *Id*. at 868.

At resentencing, the following exchange occurred between the court and the government:

> THE COURT: The Government's commitment under the Guidelines I think is not to ask for more than the minimum, and so I take it that the Government, you said this before, you are asking for the new minimum under the Sentencing Guidelines, 168 months; is that correct?

---

[4]Although the word "neither" does not appear in the transcript, the context of the sentence indicates that it was inadvertently omitted from the transcription of the government's remarks.

MS. CORDES [for the government]: I am sorry, Judge. I misunderstood. Are you saying the Government can't ask for the upper end of the Guideline range?

THE COURT: I thought, and may be mistaken. No, I think you are probably right. I suppose I have forgotten exactly the terms in the Plea Agreement. You are committed to not ask for—well, I thought there was something in the Plea Agreement that said you would recommend the minimum under the Guidelines.

Leach's attorney then interjected that, as he remembered the original sentencing hearing, the government "felt compelled to ask for the low end of the Sentencing Guidelines," even though that was "not written in the Plea Agreement." Leach's attorney then explained:

I don't know, and I can tell the Court, I don't personally recall any oral agreement between us, but I believe that at the initial sentencing hearing Ms. Cordes [for the government] has referred to a Government agreement not to oppose sentencing at the low end of the range.

I don't believe that is in the written Plea Agreement. I think that is what was asked for in the original sentencing, which would be 60 months. I can't really say that I have any documentation other than my recollection of what was discussed at the sentencing hearing.

The court acknowledged that its recollection, which was consistent with what Leach's attorney remembered, might have been based on what was stated at the sentencing hearing, rather than the text of the plea agreement. The government's attorney then asked for a recess to refresh her memory by reviewing a transcript of the initial sentencing hearing. The recess request emphasized that the government did not want to take a position at sentencing that conflicted with either the written plea agreement or any oral representations that the government might have made to Leach's attorney.

-5-

After the recess, the government's attorney stressed the seriousness of the offense and emphasized that Leach was likely to reoffend. She emphasized that nothing in the record indicated that the parties had, in fact, reached any oral agreement with respect to a government sentencing recommendation; instead, she asserted that the record showed that both the government and Leach's attorney were "unaware of exactly what oral agreement" there might have been regarding a sentencing recommendation and that the parties had only discussed "the mere possibility of an oral agreement." The government's attorney then stated:

> If there was an oral agreement, there is nothing in the Plea Agreement that restricts the Government asking for the top of the Guidelines range, and if there was an oral agreement of any sort, Mr. Moss [Leach's attorney] and I can't recall at this time.
>
> I certainly don't ever mean to violate an oral agreement that I have made with a defense attorney. With that being in mind this is a case where the Government would like the top of the Guideline.

Leach's attorney then objected to the government's recommendation, arguing that it constituted a breach of a possible oral agreement:

> The Government is correct. Judge, I don't recall the details of our oral agreement regarding the low end of the range. The transcript very clearly at the prior hearing states that we think there may have been an oral agreement.
>
> That is why the Government asked for the low end at each and every point, at the enhancement level, at the four level, the other level, and then at this level, of 60 to 63 months. I don't remember the details either, but two years ago the Government was under the impression that, hey, there may be an agreement, we couldn't figure it out, and they abided by that agreement.

> I consider this a breach of the agreement. I do consider it a breach, I object, and if we are going to say that we think we had an oral agreement two years ago, but now we don't remember the details, why is that not—we honored it back then. Why are we not honoring it now? So, I would consider it a breach.
>
> I don't know the details of it now, and I can't say what the details were. But the transcript is what it is, Judge, and so we do object on that basis.

In response, the government's attorney stated:

> First of all, with regard to the agreement at the prior sentencing that Mr. Moss is referencing, I have the transcript right here and it flat-out says that Mr. Moss nor the Government can remember if there was an oral agreement.
>
> So, I gave Mr. Moss the benefit of the doubt at that hearing and the idea there may have been an oral agreement. There is no evidence to support that. The record very clearly reflects that. No one can remember if there was or not.
>
> There is no basis for an objection either because it certainly is not clear in the Plea Agreement for us to ask for the bottom of the Guideline. So there is no breach of the Plea Agreement.

The district court, without ruling or even commenting on Leach's objection, sentenced Leach to 120 months' imprisonment. The government objected to the sentence as being unreasonably low, and Leach's attorney responded that he "ha[d] no objection, other than the breach issue, which ha[d] already been noted."

## II. *Discussion*

On appeal, Leach argues that the government's breach of the oral agreement to recommend the bottom of the Guidelines range should permit him to argue for a sentence below the low end of the Guidelines range; thus, he asks this court to remand

the matter to the district court to allow him to advocate for a sentence unrestricted by the provision of the plea agreement that required him to ask for a sentence within the Guidelines range. According to Leach, in 2006, the government recommended the most lenient Guidelines sentence based on a "potential oral agreement" with Leach. More than two years later, the government recommended the most severe Guidelines sentence, despite the prior recommendation. Leach maintains that "[a]lthough the parties did not recall its underlying details, the government['s] conduct at the original sentencing established that such recommendation constituted part of its negotiated duty under the plea agreement with [him]." Leach asserts that a breach of a plea agreement constitutes a due process violation and that, while the district court ultimately imposed a sentence below the Guidelines range, the government's advocacy for a more severe sentence could have affected the extent of the court's downward variance.

In response, the government argues that Leach is not entitled to resentencing on the mere possibility, however remote, that the government "might" have violated a "possible oral agreement" between the parties to recommend a sentence at the low end of the Guidelines.

"Issues concerning the interpretation and enforcement of a plea agreement are reviewed de novo." *United States v. Paton*, 535 F.3d 829, 835 (8th Cir. 2008) (internal quotations and citation omitted). "Plea agreements are contractual in nature and should be interpreted according to general contract principles. Due process may be violated if there is a breach of a promise that induced a guilty plea." *United States v. Sanchez*, 508 F.3d 456, 460 (8th Cir. 2007) (internal citation omitted). "The party asserting the breach—here, the Defendant—has the burden of establishing a breach." *United States v. Smith*, 429 F.3d 620, 630 (6th Cir. 2005).

When an alleged oral promise is made prior to, or in conjunction with, a plea agreement, such promise cannot serve as an inducement to plead guilty when the

defendant's "plea agreement and plea-hearing representations negate such a claim." *United States v. Norris*, 20 Fed. Appx. 582, 583 (8th Cir. 2001) (unpublished per curiam) (declining to address defendant's argument that he was induced into pleading guilty by the government's oral promise of a substantial assistance motion). This is because, "[a]bsent special circumstances, a defendant—quite as much as the government—is bound by a plea agreement that recites that it is a complete statement of the parties' commitments." *United States v. Connolly*, 51 F.3d 1, 3 (1st Cir. 1995). Thus, "[a]n integration clause normally prevents a criminal defendant, who has entered into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself." *United States v. Hunt*, 205 F.3d 931, 935 (6th Cir. 2000); *see also United States v. Ahn*, 231 F.3d 26, 36 (D.C. Cir. 2000) (stating that an integration clause, "[s]tanding alone," is "strong evidence that no implied promises existed—after all, integration clauses establish that the written plea bargain was adopted by the parties as a complete and exclusive statement of the terms of the agreement") (internal quotations and citation omitted).

The First Circuit, in rejecting a defendant's argument that the court should supplement the written plea agreement by "engrafting onto it the oral representation allegedly made by the United States Attorney during the pre-plea negotiations," explained why such an argument is without merit:

> The appellant's position flies in the teeth of paragraph 22 of the Agreement, which states flatly that the written document constitutes the complete agreement between the parties and that the "United States has made no promises or representations except as set forth in writing in this plea agreement and deny [sic] the existence of any other terms and conditions not stated herein." Where, as here, an unambiguous plea agreement contains an unqualified integration clause, it normally should be enforced according to its tenor. That means, of course, that an inquiring court should construe the written document within its four corners, "unfestooned with covenants the parties did not see fit to

mention." [*United States v.*] *Anderson*, 921 F.2d [335,] 338 [(1st Cir. 1990)].

*United States v. Alegria*, 192 F.3d 179, 185 (1st Cir. 1999); *see also Smith*, 429 F.3d at 630–31 (holding that integration clause in plea agreement precluded defendant from asserting that government had made oral promise to move for additional one-level reduction under Guidelines' acceptance of responsibility provision; defendant submitted no affidavit and did not seek evidentiary hearing to establish understanding outside four corners of agreement, and government flatly denied that it had made any such promise); *United States v. Cieslowski*, 410 F.3d 353, 361 (7th Cir. 2005) ("The written plea agreement contains an integration clause and explicitly disclaims the effectiveness of any prior oral representation. Plea agreements are governed under the principles of contract law, and oral representations cannot alter the terms of a written agreement.") (internal citation omitted); *United States v. Lenoci*, 377 F.3d 246, 258 (2d Cir. 2004) (holding that a plea agreement did not prevent the government from arguing for an upward departure, pointing out that the agreement specifically stated that "the defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing by all the parties").

Conversely, when an alleged oral promise is made subsequent to the defendant's entry of his guilty plea and is "not made as part of the inducement to plead guilty," then such a promise cannot serve as a "part of the inducement or consideration underlying the guilty plea." *United States v. Hart*, 397 F.3d 643, 647 (8th Cir. 2005) (holding that government did not breach any promise it made to move for sentencing reduction based upon defendant's substantial assistance, in exchange for defendant setting up a "sting or buy/bust arrangement," by failing to move for such sentencing reduction, as the alleged promise was made between the time of sentencing and resentencing, so that it was not used as an inducement for the defendant to plead guilty, and defendant did not set up any type of "sting or buy/bust arrangement").

Applying the reviewed case law to the instant facts, we reject Leach's argument that he should have been permitted to advocate for a more lenient sentence because of the government's alleged breach of an oral promise. First, Leach has all but conceded that there was no definitive oral promise, as Leach simply alleges that the "government's recommendation was based on a *possible oral agreement* between the parties." Furthermore, at resentencing, Leach's attorney stated that he did not "personally recall any oral agreement between" the government and Leach. He also admitted that such promise was not contained in the written plea agreement. *See Smith*, 429 F.3d at 630–31 (finding that the defendant failed to produce sufficient evidence to establish a breach of the plea agreement where defendant's counsel "all but conceded that here had been no such promise" when he stated that both sides "do have different opinions on what was said and what was—I wouldn't say as much promise, but what the understanding was when he entered his plea of guilty").

Second, as explained in *Norris*, *Connolly*, *Hunt*, and *Alegria*, if the alleged oral promise was made *before* Leach's entry of his guilty plea, then that promise would have been subsumed in, and superceded by, the written plea agreement. Paragraphs 11, 19, and 20 of the plea agreement indicate that the written plea is the complete statement of the parties' commitments. *See Connolly*, 51 F.3d at 3. In fact, ¶ 20 of the plea agreement is an integration clause, which establishes that "the above-stated terms and conditions" contained in the written plea agreement "constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement do not constitute any part of the parties' agreement and will not be enforceable against either party." We will enforce this integration clause, as it is "strong evidence" that no oral promise existed. *See Ahn*, 231 F.3d at 36. Furthermore, Leach reaffirmed at the change-of-plea hearing that there were no

promises "other than the Plea Agreement itself" that caused him to plead guilty. Leach is bound by this representation to the district court.[5]

Finally, if the alleged oral promise was made *after* Leach entered his guilty plea, then such promise could not have induced him to enter his guilty plea. *See Hart*, 397 F.3d at 647; *United States v. Quan*, 789 F.2d 711, 714 (9th Cir. 1986) ("Post-signing discussions are irrelevant because they could not have induced [the defendant] to sign the agreement or plead guilty.").

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

---

[5]Leach has not alleged that the district court committed error during his change-of-plea hearing.