# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1353

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Western District of Missouri. |
| Edward Lee Raifsnider, also known | * |
| as William Biaselli, etc., | * |
| | * |
| Appellant. | * |

_____

Submitted: September 23, 2011
Filed: December 16, 2011

_____

Before RILEY, Chief Judge, COLLOTON and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

In 2005, Edward Raifsnider pled guilty to a federal firearm violation pursuant to a written plea agreement. In 2008, he was indicted on federal fraud charges, and he subsequently moved to dismiss the indictment as precluded by the 2005 plea agreement. After the district court[1] denied the motion to dismiss, Raifsnider pled guilty but reserved the right to appeal the preclusion issue. *See* Fed. R. Crim. P.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, adopting the Report and Recommendation of the Honorable James C. England, then-Chief Magistrate Judge for the Western District of Missouri.

11(a)(2). Raifsnider now challenges the district court's failure to dismiss the indictment. We affirm.

## I.    BACKGROUND

In 2005, Raifsnider pled guilty in the Western District of Missouri to being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1), pursuant to a written plea agreement. The plea agreement explicitly excluded coverage of "any charges which may or have been filed in this or other Districts . . . other than the charges in this case." The plea agreement stipulated to Raifsnider's base offense level and criminal history category under the sentencing guidelines but stated that those stipulations did not bind the court. It also acknowledged that no promises other than those contained in the written plea agreement had been made to induce Raifsnider's guilty plea, and it contained the following integration clause: "any other terms and conditions not expressly set forth in this agreement do not constitute any part of the parties' agreement and will not be enforceable against either party."

On September 1, 2005, Raifsnider appeared before a magistrate judge for the change-of-plea hearing. When the magistrate judge inquired whether there were "any other promises or representations in addition to what's contained in the plea . . . agreement," the Assistant United States Attorney ("AUSA") handling the firearm violation noted that the parties also had agreed to a binding recommendation of a 180-month sentence pursuant to Rule 11(c)(1)(C), meaning that Raifsnider would be allowed to withdraw the plea to the firearm violation if the court did not impose the recommended 180-month sentence. The AUSA stated that he would file a notice with the court reflecting this amendment to the written plea agreement. Immediately thereafter, the magistrate judge asked Raifsnider whether "anyone made any other promise of any kind to induce you . . . to plead guilty" other than what was contained in the written plea agreement and the recommendation just announced by the AUSA.

Raifsnider confirmed that there were no other inducements for his guilty plea to the firearm violation.

The magistrate judge next asked a second AUSA, who was investigating potential fraud charges against Raifsnider in the Western District of Missouri ("the WDMO fraud charges"), whether there was "any record" he wanted to make. The second AUSA responded that he wanted to mention "a variety of issues" that he had discussed with Raifsnider and Raifsnider's attorney earlier that day "so that Raifsnider can agree that those were the sum total of our discussions." The second AUSA presented details of the parties' discussions regarding charges pending against Raifsnider's wife and son and noted that decisions regarding Raifsnider's family were independent of Raifsnider's decision to plead guilty to the firearm violation. He also noted that the parties had discussed transferring federal fraud charges pending against Raifsnider in other districts to the Western District of Missouri pursuant to Fed. R. Crim. P. 20 ("the Rule 20 fraud charges") and that the United States Attorney for the Western District of Missouri would accept such transfers. He then described his discussions with Raifsnider regarding the WDMO fraud charges and stated that he would "draft a proposed charge and allow [Raifsnider] to plead guilty." He subsequently referred to both the WDMO and Rule 20 fraud charges when he stated:

> I told [Raifsnider] that it's my understanding, and I think [Raifsnider's attorney] concurred, that because he's pled guilty to this gun case, those other charges will be incorporated into the plea—into any Presentence Investigation Report. That in the end, all the charges will be put into the same Presentence Report and that a total sentence will eventually be determined by the court.

He later disclosed telling Raifsnider that the WDMO and Rule 20 fraud charges might "add additional time" to the agreed 180-month sentence on the firearm violation, that he currently had "no firm figure as to the fraud loss" on the WDMO fraud charges, but that he would "try and get those pleas together as quickly as possible so that we can get that going."

The magistrate judge then asked Raifsnider's attorney to confirm the substance of the conversations described by the Government. Regarding the first AUSA's amendment to the plea agreement, Raifsnider's attorney simply added that the Government agreed to file the notice of its Rule 11(c)(1)(C) recommendation within ten days of the hearing. Regarding the second AUSA's comments, Raifsnider's attorney stated that "we did discuss the expediting if at all possible, to the extent possible, especially with the Rule 20 issues[,] of any sentencing." He also explained that he wanted to be clear "as to the broad range of things that we did discuss, none of which are contingent on this plea."

At this point, the magistrate judge asked several questions to confirm that Raifsnider understood that his guilty plea to the firearm violation was independent of his conversation with the second AUSA regarding the resolution of his WDMO and Rule 20 fraud charges and of the charges involving his wife and son. The magistrate judge first asked Raifsnider to confirm that "this is a total rendition of what's been said to you concerning this plea of guilty and the discussions that led up to it." The magistrate judge next asked whether Raifsnider understood that there was no "correlation" between his guilty plea to the firearm violation and the charges pending against his family. The magistrate judge then asked whether Raifsnider understood that neither the plea agreement nor his discussions with the second AUSA would "control" the sentences resulting from Raifsnider's WDMO and Rule 20 fraud charges because "[t]hey've got to stand on their own." Finally, the magistrate judge asked whether Raifsnider understood that "if it all blew up with regard to the other cases, you're still bound by the plea agreement that you have reached with regard to this case, assuming the recommendation of the United States [under Rule 11(c)(1)(c) for the 180-month sentence is] made as they say it will be made." Raifsnider answered each question in the affirmative. In answering a follow-up question, Raifsnider specifically acknowledged that even if none of the Rule 20 fraud charges were transferred, that would have "no effect on this plea." "Understanding all that," Raifsnider confirmed that he still wished to plead guilty.

A flurry of activity followed Raifsnider's plea hearing. That same day, Raifsnider filed a motion to expedite sentencing on the firearm violation. The next day, the United States filed the promised Rule 11(c)(1)(C) notice recommending a binding 180-month sentence for the firearm violation. The district court formally accepted Raifsnider's guilty plea on September 19, 2005. The court received fraud charges against Raifsnider from the Western District of Kentucky ("the WDKY fraud charges") on November 9, 2005. On November 29, 2005, Raifsnider moved to continue the change-of-plea hearing for the WDKY fraud charges. The court granted the continuance and scheduled the change-of-plea hearing for January 19, 2006. Meanwhile, on December 1, 2005, Raifsnider filed a *pro se* motion to withdraw his guilty plea to the firearm violation. On January 19, 2006, Raifsnider refused to plead guilty to the WDKY fraud charges, which were then transferred back to the Western District of Kentucky. On March 7, 2006, the district court adopted the magistrate judge's Report and Recommendation denying Raifsnider's motion to withdraw his guilty plea to the firearm violation. On March 15, 2006, the district court sentenced Raifsnider to the agreed 180-month term of imprisonment for the firearm violation. The WDMO fraud charges had not yet been filed and, consequently, were not addressed in the presentence investigation report or at sentencing.

The WDMO fraud charges were not formalized until October 22, 2008, when a grand jury indicted Raifsnider on one count of interstate transportation of fraudulently taken property in violation of 18 U.S.C. § 2314, one count of possessing identity documents or authentication features with intent to unlawfully use or transfer them in violation of 18 U.S.C. § 1028(a)(3), and one count of possessing a document-making implement with intent to produce false identification in violation of 18 U.S.C. § 1028(a)(5). On March 31, 2009, a grand jury returned a superseding indictment adding two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), each of which carries a mandatory 24-month sentence to be served consecutively with all other terms of imprisonment.

Raifsnider moved to dismiss all five counts of the superseding indictment as precluded by the 2005 plea agreement. He contended that he entered his guilty plea to the firearm violation "in reliance on the Government's promises that the pending fraud related cases in the Western District of Missouri would be filed and combined with the 180 month sentence on the felon in possession of a firearm case as part of binding plea agreement." He argued that the Government breached this promise by "never fil[ing] the fraud case before [he] was sentenced on the gun case," by refusing to agree to run the original three fraud counts concurrently with the firearm violation, and, because of their mandatory consecutive sentences, by adding the two aggravated identity theft counts. The district court denied the motion, holding that the Government never promised that the sentences on the WDMO fraud charges would run concurrently with the sentence on the firearm violation, that the second AUSA's comments regarding the WDMO fraud charges were contingent on Raifsnider's guilty plea to the WDKY fraud charges, and that the Government was not required to expedite the WDMO fraud charges after Raifsnider refused to plead guilty to the WDKY fraud charges. Raifsnider conditionally pled guilty to all five counts. The district court imposed sentences totaling 63 months and 2 days of imprisonment for the first three counts to run concurrently with Raifsnider's 180-month sentence on the 2005 firearm violation. After granting a downward departure from the 24-month mandatory minimum sentence, the court imposed consecutive 18-month sentences on the two identify theft counts to run consecutively to all other undischarged sentences. Thus, the net effect of Raifsnider's conviction on the WDMO fraud charges was a sentence that extended 36 months beyond the 180-month sentence for the firearm violation. Raifsnider timely appeals.

## II.    DISCUSSION

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). This

is so because the Government's breach of a promise that induced a guilty plea violates the due process rights of the defendant. *United States v. Jensen*, 423 F.3d 851, 854 (8th Cir. 2005). Raifsnider contends that the Government breached the 2005 plea agreement by failing to file the WDMO fraud charges before he received the 180-month sentence on the firearm violation. Raifsnider offers two theories as to what promise the Government breached by filing the fraud charges after his sentencing hearing for the firearm violation. Under his first theory, he alleges that the Government promised that "the yet unfiled fraud related cases . . . would be filed and combined with the 180 month sentence on the felon in possession of a firearm case as part of a binding plea agreement." In other words, Raifsnider appears to contend that the binding180-month sentencing recommendation applied to both the firearm violation and the WDMO fraud charges. Under his second theory, Raifsnider contends that the Government promised to file the WDMO fraud charges before he was sentenced on the firearm violation so that the sentencing proceedings for the two cases could be consolidated. The Government responds that it made neither promise, and that even if it did, Raifsnider's guilty plea to the firearm violation was not induced by either promise.

"Issues concerning the interpretation and enforcement of a plea agreement are reviewed de novo." *United States v. Paton*, 535 F.3d 829, 835 (8th Cir. 2008) (quoting *United States v. Borer*, 412 F.3d 987, 994 (8th Cir. 2005)). In determining whether a plea agreement has been breached, courts interpret the agreement according to general contract principles. *United States v. Sanchez*, 508 F.3d 456, 460 (8th Cir. 2007). The party asserting the breach has the burden of establishing it. *United States v. Leach*, 562 F.3d 930, 935-36 (8th Cir. 2009). Thus, Raifsnider must show that the Government made one of the promises he asserts and that the promise was part of the "inducement or consideration" offered by the government in exchange for his plea. *See Santobello*, 404 U.S. at 262.

Raifsnider's contention that the Government promised to limit the sentence for both the firearm violation and the WDMO fraud charges to 180 months' imprisonment is contradicted by the plain terms of the written plea agreement, which explicitly excluded coverage of any charges other than those pending for the firearm violation. The written plea agreement also contained an integration clause, which "normally prevents a criminal defendant . . . from asserting that the government made oral promises to him not contained in the plea agreement itself." *Leach*, 562 F.3d at 935-36 (quoting *United States v. Hunt*, 205 F.3d 931, 935 (6th Cir. 2000)). An integration clause will not, however, preclude proof of oral promises when both parties concede that the written plea agreement does not contain all of the Government's promises that induced the defendant to plead guilty. *Peavy v. United States*, 31 F.3d 1341, 1345 (6th Cir. 1994). Here, both parties concede that they amended the written plea agreement to make a binding 180-month sentencing recommendation pursuant to Rule 11(c)(1)(C). Thus, the Rule 11(c)(1)(C) promise is binding with respect to the firearm violation despite the integration clause in the written agreement.

The record does not, however, support Raifsnider's assertion that this promise extended to the WDMO fraud charges. The second AUSA contradicted any notion that the sentence on the WDMO fraud charges was limited to the 180-month sentence agreed upon for the firearm violation. He stated in open court that determining the amount of money involved in Raifsnider's fraud charges "won't increase [the sentence on the firearm] count, but it could affect the overall sentence because the fraud counts may or may not *add some additional time*" (emphasis added). He stressed this point yet again when he told the court that he had "no firm figure as to the fraud loss at this point . . . [a]nd that could impact on Raifsnider's overall offense level when everything is grouped." *See* U.S.S.G. § 2B1.1(b)(1) (calculating sentencing guidelines offense level for fraud offenses based on amount of fraud loss). Furthermore, neither the Government nor Raifsnider made any mention in the change-of-plea hearing about agreeing to run the sentences concurrently. Raifsnider has not

demonstrated that the Government's promise of a binding 180-month sentencing recommendation on the firearm violation also applied to the WDMO fraud charges or that the Government promised that the sentence on the WDMO fraud charges would run concurrently with the sentence for the firearm violation. The Government cannot breach a promise it did not make. Thus, Raifsnider's first theory for breach of the plea agreement fails.

Raifsnider's second theory alleges that the Government promised to file the WDMO fraud charges before he was sentenced on the firearm violation so that the sentencing proceedings for the two cases could be consolidated. As support for the existence of this promise, Raifsnider relies on the second AUSA's statement that he would "allow" Raifsnider to plead guilty to the WDMO fraud charges. Raifsnider argues that this statement became a promise to file the WDMO charges before the sentencing hearing for the firearm violation, permitting consolidated sentencing proceedings, when the second AUSA subsequently expressed his expectation that "in the end, all the charges will be put into the same Presentence Report and . . . a total sentence will eventually be determined by the court." The Government responds that this statement is not a promise, that Raifsnider breached any agreement for sentencing consolidation by refusing to plead guilty to the WDKY fraud charges, and that even if the statements could be construed as a promise, that promise was not part of the inducement for Raifsnider's guilty plea to the firearm violation.

Although the second AUSA's disclosures at the 2005 plea hearing evidence a common aspiration to consolidate sentencing proceedings for Raifsnider's various criminal charges, they fall short of demonstrating a commitment by the Government to file the WDMO fraud charges before Raifsnider was sentenced for the firearm violation. For example, the Government indicated that the consolidation of sentencing proceedings was merely aspirational by stating that it had "no firm figure as to the fraud loss at this point," but would "*try* and get those pleas together as quickly as possible so that we can get that going" (emphasis added). Raifsnider's

attorney confirmed that the parties' discussion regarding sentencing consolidation was merely aspirational when he added that they discussed the "expediting *if at all possible, to the extent possible*, especially with the Rule 20 issues[,] of any sentencing" (emphasis added). When the magistrate judge began to respond to this statement, Raifsnider's attorney conceded that this would be "difficult." A statement is a promise only if it creates a "justified expectation" in the promisee that the promissor will "make good the assurance by performance." Restatement (Second) of Contracts § 2 cmt. a (1981). Although the Government said it would "try" to determine the unknown amount of the fraud losses quickly—a necessary component for the applicable sentencing guidelines calculations—and understood that doing so might allow Raifsnider to consolidate his sentencing proceedings, these statements did not create a justified expectation that the Government had undertaken the obligation to file the WDMO fraud charges before Raifsnider was sentenced on the firearm violation so that sentencing proceedings for "all the charges" could be consolidated.

Raifsnider's argument further strains credulity because it requires construing the second AUSA's statements not only as a promise to abide by a filing deadline but also as a promise to abide by that deadline regardless of how Raifsnider might attempt to frustrate the Government's ability to meet it. The same day he made this purported bargain, Raifsnider moved to expedite sentencing on the firearm violation, an action clearly at odds with the Government's stated need for time to evaluate the loss associated with the fraud charges. Regarding the Rule 20 fraud charges, Raifsnider first delayed and ultimately rejected a guilty plea to the WDKY fraud charges, thus preventing consolidation of sentencing proceedings for "all of the charges." During this time, Raifsnider also moved to withdraw his plea on the firearm violation, leaving the Government no reason to believe that either the WDMO or WDKY fraud charges would need to be addressed at any sentencing hearing in the near future. When his motion to withdraw the plea was finally resolved with no other fraud charges having been filed, Raifsnider did not object to the scheduling of a

sentencing hearing one week later, and indeed, Raifsnider never withdrew his motion to expedite sentencing on the firearm violation.  Although the second AUSA's statements reveal the Government's willingness to consolidate Raifsnider's sentencing proceedings, they did not provide Raifsnider with a justified expectation that the Government would only file the WDMO fraud charges if it did so before Raifsnider's sentencing hearing for the firearm violation despite whatever efforts Raifsnider might take to delay or prevent consolidation of sentencing proceedings for "all the charges."

Both of Raifsnider's theories suffer from an additional problem.  Even assuming that the second AUSA's statements somehow constituted a promise under either of Raifsnider's theories, Raifsnider has failed to demonstrate that any of these statements induced his guilty plea. *See Leach*, 562 F.3d at 935.  Raifsnider repeatedly affirmed, both before and after the second AUSA disclosed the substance of their conversations, that his guilty plea to the firearm violation was not contingent on the second AUSA's statements or the resolution of the other cases that could be brought against him.  He first affirmed this when he signed the written plea agreement, which expressly disclaimed coverage of "any charges which may or have been filed in this or other Districts . . . other than the charges in this case."  After the Government explained that the parties had amended the written plea agreement to include a binding Rule 11(c)(1)(C) 180-month sentence recommendation for the firearm violation, Raifsnider confirmed that there were no other inducements for his guilty plea.  Even after the second AUSA disclosed his previous conversations with Raifsnider concerning Raifsnider's family, the Rule 20 fraud charges, and the WDMO fraud charges, Raifsnider continued to affirm that his guilty plea was not contingent on proceedings in the other cases through his responses to questions posed by the magistrate judge.  Raifsnider confirmed that "nothing in the discussions . . . can control . . . what the ultimate disposition may be of those other cases. They've got to stand on their own."  He acknowledged that "if it all blew up with regard to the other cases, [he was] still bound by the plea agreement . . . to this case,

-11-

*assuming the recommendation of the United States [w]as made as they say it will be made*" (emphasis added).[2]  "Understanding all that," Raifsnider acknowledged that he still wished to plead guilty.  In short, Raifsnider repeatedly affirmed at the plea hearing that the binding 180-month sentencing recommendation for the firearm violation was the only inducement to his guilty plea beyond what was contained in the written plea agreement, and Raifsnider "is bound by this representation."  *See Leach*, 562 F.3d at 937.

When a plea is not contingent on a promise, that promise cannot induce the plea.  *See id.* at 936-37 (holding that the Government's promise to the defendant was not part of the inducement to plead guilty because it was made after the guilty plea).  Given the repeated acknowledgment by all involved that Raifsnider's guilty plea was not contingent on the second AUSA's statements or the resolution of the other cases, Raifsnider has not shown that the guilty plea to the firearm violation "rests in any significant degree" on a promise to "combine" the sentences for the WDMO fraud charges and the firearm violation or to file the WDMO fraud charges before the sentencing hearing for the firearm violation.  *See Santobello*, 404 U.S. at 262.  Because the Government did not breach the 2005 plea agreement, the district court did not err in denying Raifsnider's motion to dismiss the WDMO fraud charges.[3]

---

[2]Raifsnider does not dispute that the Government fulfilled this promise.

[3]Raifsnider also challenges the extent of the sentencing-guidelines downward departure granted by the district court.  We lack jurisdiction to consider this challenge because, "[a]bsent an unconstitutional motive, the extent to which a district court exercises its discretionary authority to depart downward is not subject to review." *United States v. Sykes*, 356 F.3d 863, 865 (8th Cir. 2004); *see also United States v. Rublee*, 655 F.3d 835, 839 (8th Cir. 2011).  Raifsnider does not contend that the district court had an unconstitutional motive in limiting the extent of the downward departure, and we thus dismiss Raifsnider's appeal of his sentence.

## III.    CONCLUSION

For the foregoing reasons, we affirm.

_____