# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-1182
_____

United States of America

*Plaintiff - Appellee*

v.

Fred Miles Thompson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota - Fargo
_____

Submitted: October 25, 2013
Filed: October 21, 2014
_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

Fred Thompson pleaded guilty to conspiracy to possess with intent to distribute a mixture containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and use of a firearm during a drug trafficking crime, in violation of 18 U.S.C.

§ 924(c)(1)(A)(ii). The district court[1] sentenced Thompson to 480 months' imprisonment on Count 1 and a consecutive life sentence on Count 2. Thompson appeals, challenging the district court's compliance with Fed. R. Crim. P. 11, alleging the district court improperly participated in plea negotiations and failed to advise him of the maximum sentence for Count 2. Because we find Thompson has not made the required showing that there was a reasonable probability that but for the alleged errors, he would not have entered a guilty plea, we affirm.[2]

## I. Background

On March 21, 2012, a grand jury returned a two-count indictment against Thompson, charging him in Count 1 with conspiracy to possess with intent to distribute a mixture containing methamphetamine and in Count 2 with use of a firearm during a drug trafficking crime. On September 12, 2012, the government filed an information under the "three strikes" provision of 18 U.S.C. § 3559(c)(4), asserting Thompson was subject to a mandatory life sentence if convicted on Count 2.

Thompson and the government negotiated a plea agreement wherein Thompson agreed to plead guilty to both counts of the indictment in exchange for the government agreeing to reduce the drug quantity charged in Count 1, thus lowering the statutory mandatory minimum sentence to which he was exposed, and to withdraw the § 3559 information. The plea agreement set forth the statutory penalties for each count: Count 1 carried a mandatory minimum sentence of 5 years, a maximum sentence of 40 years, and 4 years of supervised release; Count 2 carried a consecutive 7-year mandatory minimum sentence, a maximum sentence of life, and 3 years of

---

[1]The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota.

[2]We have jurisdiction under 28 U.S.C. § 1291.

supervised release. The plea agreement also contained an appeal waiver, which provided that Thompson waived his right to appeal, except for a claim of ineffective assistance of counsel or a sentence above the court-determined sentencing guidelines range.

The day before trial was to begin, Thompson notified the district court he would plead guilty. The proposed plea agreement was provided to the district court for review. The district court delayed the arrival of the jury to the afternoon to allow time for a change of plea hearing. When he appeared before the court the following morning, however, Thompson stated he had changed his mind and still wanted a trial. The district court then engaged in the following dialogue with Thompson:

> THE COURT: Now if you're convicted on both counts—the second count is a use of a firearm in a crime of violence and drug trafficking in violation of 18, 924. That's 18, United States Code, Section 924. And so basically here's what's going to happen. There was an offer on the table that would have reduced the penalty on the first count and would have removed the life—mandatory life sentence on the second count. So—and I think that what you would have been looking at a mandatory minimum, if I understand what the plea offer was, you would have been looking at a mandatory minimum five years on Count One with a consecutive seven on Count Two. So if you took the Plea Agreement there would be a mandatory minimum 12 years of imprisonment. If you're acquitted obviously you don't go to prison at all. If you're convicted on both counts you will be sentenced to a life sentence plus seven years.

> Now that means in this system that you will die in prison. That's because there is no parole and no early release in the federal system, okay? The only way you can get out of prison if you're convicted on the charges that you currently face is if the president of the United States pardons you or commutes your sentence to a period of years.

> Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. Now that means that at the end of the day if you try this case and it goes to a jury and you're convicted I will have no choice, none, but to sentence you to life plus seven. And there will be absolute—I won't be able to do anything else no matter how much I might wish I could. No matter how much I might try to do it, the law will only allow one sentence.

As a matter of fact, even though we will have a delay between the time the verdict comes in and the time of sentencing, we really don't need it because in the end I won't have any choice. So the sentencing hearing will become a mere formality and the only reason we'll hold that sentencing hearing if you're convicted is to make some recommendations about where you might serve your time in prison, all right? Because my hands will be completely tied if you're convicted. Do you understand that?

THE DEFENDANT: Yes.

The prosecutor and Thompson's attorney both confirmed with the court that the benefit of the proposed plea agreement was that it provided for a lower drug quantity on Count 1 and removed the mandatory sentence of life on Count 2. Thompson's attorney informed the court that he and Thompson had discussed the benefits of the plea agreement the day before "at length." The district court told Thompson:

THE COURT: Mr. Thompson, this is a high-risk strategy, you know, and I think you ought to be aware of this because on one hand you've got 12 years. You're a young enough man that it seems probable that you will be able to serve that sentence and walk out of prison someday, all right? If you try this case and you win you'll be free sometime next week. If you try this case and you lose you will never be free.

Thompson stated he understood but still intended to go to trial. The district court continued:

> THE COURT: Now one of the risks you run in this trial is that if the evidence starts to come in and you don't think it's going very well it's highly unlikely the government's going to let you change your mind and accept any kind of deal in the middle of the trial. Not impossible but my experience tells me that they don't usually do that. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. And so this decision, you know, is in many ways—once this train leaves town it leaves town and if you're not on it you're not on it. You understand that?
>
> THE DEFENDANT: Yes.

Thompson reiterated his intention to go to trial. After some discussion about housekeeping matters, Thompson's counsel asked for a recess. After a fifteen-minute recess, Thompson informed the court he had decided to plead guilty pursuant to the agreement.

The district court immediately held a plea hearing. During the plea colloquy with Thompson, the court stated:

> THE COURT: The defendant is charged in Count One with conspiracy to possess with intent to distribute and distribute a controlled substance, in violation of 21, United States Code, Section 841(a)(1). The Court is informed that the Plea Agreement is back on. If that's the case the maximum term of imprisonment is 40 years, the minimum mandatory is five. The maximum allowable fine is $5 million, supervised release of four years and a $100 special assessment.

Count Two is now an amended charge to use of a firearm in a drug trafficking crime, in violation of 18, United States Code, Section 924(c)(1)(A)(iii). That would carry a statutory seven-year consecutive sentence with a maximum allowable fine of $250,000, supervised release not to exceed three years and a $100 special assessment.

Do you understand the charges against you, sir?

THE DEFENDANT: Yes.

THE COURT: And do you understand the penalties that you face?

THE DEFENDANT: Yes.

Later in the plea hearing, the court further inquired of Thompson as follows:

THE COURT: Okay. And you understand that by pleading guilty to Count Two there is a mandatory minimum seven-year sentence that will be consecutive to the mandatory minimum five-year sentence on Count One?

THE DEFENDANT: Yes.

THE COURT: And that will be the least amount that the Court could sentence you. The Court could still sentence you to a higher amount but the least that they could sentence you to is that 12 years. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Yeah, because what I'm saying is there's no way I could go below that and not violate the law, all right? Do you understand?

-6-

THE DEFENDANT: Yes.

At no time before or during the plea hearing did the district court inform Thompson he still faced a maximum sentence of life, even if he entered the plea agreement. The district court acknowledged the discussion that had occurred prior to the plea hearing, stating: "The Court did not intend to pressure you one way or the other in describing what happened. I just wanted you to be fully aware of what was going on." Thompson agreed that "[n]o effort was made by the Court to force [him] into taking this Plea Agreement" and that the plea was "a matter of [his] own free will." The district court then found Thompson's plea to be "freely and voluntarily made." The court found the factual basis for the plea adequate, set a sentencing date of January 8, 2013, and ordered the preparation of a presentence investigation report (PSR).

On November 30, 2012, a draft PSR was prepared. The PSR accurately set forth the minimum and maximum statutory sentences for both counts. The PSR assessed Thompson a 4-level enhancement under the United States Sentencing Guidelines Manual (USSG) for being a leader or organizer of a drug conspiracy, see USSG § 3B1.1(a), and also concluded he was a career offender under USSG § 4B1.1. The PSR scored Thompson with 27 criminal history points, resulting in a criminal history category VI regardless of whether he qualified as a career offender. The resulting recommended guidelines range for Count 1 was 210–262 months. Because Count 2 required a minimum consecutive sentence of 84 months, the PSR recommended a guidelines range for both counts of 294–346 months.

Thompson did not file objections to the PSR. On January 3, 2013, he did file a sentencing memorandum, however, in which he objected to the role enhancement and addressed the career offender issue by conceding he "is unable to argue that the Defendant doesn't fit the technical definition of a career offender," but requested a sentence "less than the full value associated with a career offender designation." The

memorandum did not address the PSR's conclusion that Thompson's statutory maximum sentence on Count 2 was a life sentence. At the sentencing hearing, the district court found Thompson qualified as a career offender, with an advisory guidelines range of 210–262 months.[3] During the hearing, the district court noted that on Count 2, Thompson "face[d] a mandatory minimum seven years to life." Thompson's attorney informed the court he had no objection to the PSR beyond what had been noted in his sentencing memorandum.

The government recommended the district court vary upward to a total sentence of 420 months based on Thompson's long and violent criminal history. Thompson's counsel asked for a sentence of 180 months, relying in large part on Thompson's age. In his allocution, Thompson asked for leniency. Agreeing with the government's argument, the district court concluded it was "impossible to protect the public from the conduct of the defendant without a sentence that guarantees that he never is released." The district court sentenced Thompson to the statutory maximum sentence of 480 months in prison on Count 1 and a consecutive statutory maximum sentence of life on Count 2.

## II. Discussion

Thompson asserts, for the first time on appeal, that the district court violated Fed. R. Crim. P. 11(c)(1) by participating in plea negotiations, thus coercing him into pleading guilty, and violated Rule 11(b)(1)(H) by failing to advise him of the maximum possible penalty on the firearm offense. The government argues Thompson explicitly waived his right to appeal any claim other than one based on a sentence

---

[3]The court also found Thompson was a leader or organizer pursuant to USSG § 3B1.1(a) and assessed him a 4-level enhancement. Because his offense level as a career offender was higher than the total offense level which would have applied had he not been a career offender, however, this enhancement did not affect his guidelines range.

higher than the calculated sentencing guidelines range or one based on ineffective assistance of counsel. Thompson counters that the appeal waiver is not valid because his plea was not knowing and voluntary due to the district court's Rule 11 errors.

Whether a defendant has waived the right to appeal a sentence is subject to de novo review. United States v. Haubrich, 744 F.3d 554, 556 (8th Cir. 2014). "When reviewing a purported waiver, we must confirm that the appeal falls within the scope of the waiver and that both the waiver and plea agreement were entered into knowingly and voluntarily." United States v. Andis, 333 F.3d 886, 889–90 (8th Cir. 2003) (en banc). The parties agree that Thompson's appeal falls within the scope of the waiver. Thompson specifically argues, however, that as a result of the alleged Rule 11 violations, both his guilty plea and appeal waiver were not entered into knowingly and voluntarily. Because Thompson did not waive an appeal challenging the voluntariness of his plea, we address his arguments. Haubrich, 744 F.3d at 558 ("'waivers are not absolute' and 'the decision to be bound by the provisions of the plea agreement . . . must be knowing and voluntary.'" (quoting DeRoo v. United States, 223 F.3d 919, 923 (8th Cir. 2000))).

Thompson did not object to any purported Rule 11 errors at the district court. As a result, our review is for plain error. United States v. Foy, 617 F.3d 1029, 1034 (8th Cir. 2010) ("Instances of noncompliance with Rule 11 may be raised for the first time on [direct] appeal, but our review is for plain error."). To succeed on plain error review, Thompson must show not only an error, that was plain, but also that there is a "reasonable probability that but for the error, he would not have entered a guilty plea." Id. (quotation omitted). "Even if he establishes such a probability, relief is discretionary and the court should not exercise that discretion unless the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." Id. (alteration in original) (quotation omitted).

Thompson's first alleged Rule 11 error is that the district court violated Fed. R. Crim. P. 11(b)(1)(H) by not advising him during his plea hearing he still faced a potential life sentence on Count 2, even if he entered the plea agreement. Rule 11(b)(1)(H) directs the district court to inform a defendant in open court of "any maximum possible penalty, including imprisonment, fine, and term of supervised release," and to make sure the defendant understands the maximum possible penalty before accepting a guilty plea. The government concedes the district court did not explicitly tell Thompson the maximum penalty for Count 2 was life imprisonment. This omission was error, and it was plain. See United States v. Todd, 521 F.3d 891, 895 (8th Cir. 2008) (district court's failure to advise defendant during plea hearing of maximum sentence was error).

Thompson asserts the failure to inform him of the statutory maximum sentence he faced was further compounded by the district court's comments made shortly before he decided to plead guilty—the second alleged Rule 11 error. He characterizes these comments as improper participation in plea negotiations, in violation of Fed. R. Crim. P. 11(c)(1) (The parties "may discuss and reach a plea agreement" but "[t]he court must not participate in these discussions."). "We have strictly construed [Rule 11(c)(1)] to require an absolute prohibition upon district court participation in plea negotiations, either with counsel or in the presence of the defendant." United States v. Nesgoda, 559 F.3d 867, 869 (8th Cir. 2009) (citing United States v. Washington, 109 F.3d 459, 463 (8th Cir. 1997)).

Whether the district court's comments constituted improper participation in plea negotiations is a close question. Under Rule 11, the judge's role is "limited to acceptance or rejection of agreements after a thorough review of all relevant factors." United States v. Gallington, 488 F.2d 637, 640 (8th Cir. 1973). The district court's comparison of the sentence Thompson faced if he went to trial with the sentence if he pleaded guilty, standing alone, is not improper participation in plea negotiations. Cf. United States v. Harrell, 751 F.3d 1235, 1239 (11th Cir. 2014) (district court

improperly participated in plea negotiations when it not only cautioned co-defendant, in defendant's presence, about likelihood of much higher sentence if convicted after trial, but also initiated plea-related discussions with defendant; commented on plea terms it would accept; and orchestrated plea agreement into which defendant ultimately entered).  By themselves, these comments may be read as the district court's attempt to ensure Thompson understood the different penalties he faced depending on which option he chose—pleading guilty or going to trial.

Of more concern are the district court's statements that Thompson was engaging in a "high-risk strategy [ ] because on one hand you've got 12 years," and "[y]ou're a young enough man that it seems probable that you will be able to serve that sentence and walk out of prison someday, all right?"  In reviewing these statements, however, we note that the district court never expressly advised Thompson to plead guilty or told him that pleading guilty would be in his best interests.  Cf. United States v. Davila, __U.S.__, 133 S. Ct. 2139, 2148 (2013), ("Magistrate Judge's repeated exhortations to Davila to "tell it all" in order to obtain a more favorable sentence . . . were indeed beyond the pale"); United States v. Hemphill, 748 F.3d 666, 675 (5th Cir. 2014) (district court's "repeated and extensive description of adverse consequences to other defendants who rejected pleas, and its discussion of the 'success story' defendant who accepted a plea, were akin to the court advocating a preference for the proposed plea offer and the belief that the plea was in Hemphill's best interest").

Nor did the district court engage itself in the negotiation of particular terms or conditions of the plea agreement.  Cf. United States v, Kyle, 734 F.3d 956, 964–65 (9th Cir. 2013) (district court improperly participated in plea negotiations by telling parties what sentence it would find acceptable in order to resolve case without trial); United States v. Kraus, 137 F.3d 455–57 (7th Cir. 1998) (impermissible participation in plea negotiations where, after district court rejected first plea proposal as too lenient, government contacted district court's "room clerk" with new proposal, to

which clerk responded favorably, inducing defendant to agree to higher sentence); United States v. Crowell, 60 F.3d 199, 205 (5th Cir. 1995) (district court violated Rule 11 in committing itself to a "sentence of at least a certain level of severity"). And the district court did not give an opinion as to the strength of the government's case in an effort to convince Thompson to plead guilty. Cf. Hemphill, 748 F.3d at 674 (district court violated Rule 11 by comparing evidence in Hemphill's case to the evidence in other defendants' cases, implying Hemphill would also be found guilty); United States v. Bradley, 455 F.3d 453, 462 (4th Cir. 2006) (district court improperly participated in plea negotiations when, after first day of trial, it reviewed the amount and strength of the government's evidence with defendants and advised them they might "be better off pleading to the indictment").

The disputed comments in this case were isolated in nature, and an after-the-fact review of the written transcript of the colloquy between the court and Thompson may result in a tendency to give those comments more attention and weight than they received at the time. Nevertheless, we recognize Thompson's concerns. While undoubtedly well-intentioned, the district court's comments suggested a sentence of 12 years was a possible outcome if Thompson entered the plea agreement and pleaded guilty. Cf. United States v. Baker, 489 F.3d 366, 373 (D.C. Cir. 2007) (district court improperly participated in plea negotiations where court discussed "year and a day" sentence in similar case, emphasized court would be "consistent" to the extent it could, specifically mentioned previous defendant had "pled guilty early on," and three times encouraged parties to "talk again"); United States v. Diagle, 63 F.3d 346, 348–49 (5th Cir. 1995) (district court impermissibly participated in plea negotiations by indicating to defendant in pre-plea meeting in chambers that it would follow the government's recommendation that his sentence be capped at nine years); United States v. Werker, 535 F.2d 198, 203 (2nd Cir. 1976) (judge's promise of specific sentence to be imposed if defendant chose to plead guilty "necessarily constitutes participat(ion) in such discussions") (alteration in original). And, according to the court, going to trial was a "high-risk strategy." Cf. United States v. Rodriquez, 197

-12-

F.3d 156, 159 n. 5 (5th Cir. 1999) (district court's comment that "[r]ight now he's looking at five years minimum and in about 30 minutes, he's going to be looking at ten years minimum" indicated belief defendant would be found guilty if he went to trial and constituted improper participation in plea negotiations) (alteration in original).

Assuming for the sake of analysis that the district court's comments constituted improper participation in plea negotiations in violation of Rule 11, and that the error was plain, Thompson still must show that the district court's Rule 11 "errors affected his substantial rights, and that failure to correct them would seriously affect the fairness, integrity, or public reputation of judicial proceedings." Todd, 521 F.3d at 896 (citing United States v. Olano, 507 U.S. 725, 732 (1993)). To show the errors affected his substantial rights in this context, Thompson must demonstrate a "reasonable probability that but for the error, he would not have entered a guilty plea." Id. (citing United States v. Dominguez Benitez, 542 U.S. 74, 82 (2004)).

Some events on the day Thompson pleaded guilty do suggest that the Rule 11 errors may have influenced his decision to plead guilty. During the hearing before he decided to plead guilty, Thompson told the district court three times he wanted to go to trial. After a brief recess, Thompson informed the court he wanted to plead guilty.[4] The plea hearing immediately followed. The temporal proximity between a court's improper participation in plea negotiations and a plea hearing is a circumstance that may support a finding of prejudice. See Davila, 133 S.Ct. at 2149; see also Harrell, 751 F.3d at 1240–41 (plea hearing following a few hours after

---

[4]Both parties point to the recess as a fact supporting their respective positions regarding whether the district court violated Rule 11 by improperly participating in plea negotiations; and both parties assert the reason for the recess was to allow Thompson to consult with his attorney, presumably regarding the proposed plea agreement. Neither the reason why the recess was requested, nor what happened during the recess, is part of the record, and we decline to speculate as to either.

-13-

improper participation found to be prejudicial); Hemphill, 748 F.3d at 677 (four day delay between improper participation and plea hearing prejudicial); Kyle, 734 F.3d at 966 (agreement reached twelve days after remarks found to be prejudicial); but see United States v. Castro, 736 F.3d 1308, 1314 (11th Cir. 2013) (timing alone not dispositive). Thompson also pleaded guilty before the same judge who made the comments and who also failed to advise him of the proper statutory maximum sentence. Cf. Davila, 133 S.Ct. at 2149 (noting defendant pleaded guilty before a different judge than the judge who made the improper remarks and more than three months had elapsed).

Other events on that same day, however, indicate otherwise. Thompson complains of the district court's failure to inform him he still faced a possible sentence of life imprisonment. Yet he was informed of this fact in the plea agreement he signed in open court at the hearing. The court discussed the plea agreement with him at the hearing, and Thompson stated under oath he understood the maximum and minimum penalties he faced if he pleaded guilty or was convicted after trial. He also agreed that his attorney had "explain[ed] the charges to [him] and the possible penalties that [he] might face if [he] were convicted or plead[ed] guilty." As for Thompson's assertion that "the court['s comments] caused him to believe he might be sentenced to only 12 years," the district court expressly told Thompson that his sentence could be longer: "The Court could still sentence you to a higher amount but the least that they could sentence you to is that 12 years." Finally we note that at the time he entered it, the plea agreement did offer Thompson a benefit: a lower mandatory minimum sentence on Count 1, and the opportunity to receive less than a mandatory life sentence on Count 2. While this opportunity did not ultimately come to fruition, it was a benefit of the plea agreement nonetheless. See Todd, 521 F.3d at 896-97 (benefits of plea agreement included government's recommendation for five-year term of imprisonment as well as avoiding possibility of consecutive sentence).

-14-

To determine whether Thompson satisfied his burden that he would not have pleaded guilty absent the district court's errors, however, we are to look at the entire record, not just the plea hearing. Davila, 133 S. Ct. at 2150. During the presentence process, Thompson received a PSR that again put him on notice that the maximum sentence on Count 2 was life imprisonment. The PSR also recommended a guidelines range for both counts of 294–346 months. Thompson filed no objections to the PSR. Even in his sentencing memorandum, Thompson did not object to the statutory maximum sentence of life—either to say he was not aware it would apply to him, or that he thought it should not, as a matter of law, apply; nor did he assert that the recommended guidelines range was far above the 12-year sentence he now asserts he was lead to believe he might receive. Indeed, he conceded he had no legal or factual basis to argue that he did not qualify as a career offender. And, significantly, Thompson never sought to withdraw his guilty plea, because of Rule 11 errors or for any other reason, even after he received a copy of the PSR. See Todd, 521 F.3d at 896.

If Thompson had taken any action to show that, but for the Rule 11 errors, there is a reasonable probability he would not have entered a guilty plea, we might come to a different result than we do. However, even during the sentencing hearing, Thompson failed to give any indication that the district court had lead him to expect a particular sentence in exchange for pleading guilty. During the hearing, the district court reviewed the guidelines calculation and the minimum and maximum statutory penalties Thompson faced on each count as set out in the PSR. For Count 2, the district court informed Thompson he faced a "mandatory minimum seven years to life." Yet, when asked, Thompson's attorney told the court he had no additional objections to the PSR. The court then addressed Thompson directly: "[Y]ou have the right to make a statement if you wish. Anything you say I will consider in sentencing." Thompson stated "[e]very day I think about whether I'm going to die in prison," and he asked for leniency. But neither he nor his attorney mentioned any possible Rule 11 errors or expressed an expectation that Thompson would receive a

sentence of any particular length if he waived his right to trial and entered the plea agreement. It was not until Thompson filed his appeal that he ever raised a concern about any comments the district court made, suggested those comments may have influenced his decision to plead guilty, or expressed the desire to withdraw his guilty plea. Thompson understandably hoped for a sentence of less than life imprisonment after pleading guilty and waiving his right to trial. The plea agreement he entered offered that possibility, but not that guarantee. After reviewing the entire record—including the events on the day he pleaded guilty, the presentence process, and the sentencing hearing—we conclude Thompson has not shown a reasonable probability that, but for the Rule 11 errors, he would not have pleaded guilty.

Accordingly, we affirm.

_____