# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3519

_____

Fred Miles Thompson

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: May 12, 2017
Filed: September 19, 2017

_____

Before SMITH, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Fred Miles Thompson pleaded guilty, pursuant to a written plea agreement, to conspiracy to possess with intent to distribute methamphetamine and use of a firearm in connection with a drug trafficking crime. The district court[1] sentenced Thompson

_____

[1] The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

to a term of 480 months' imprisonment on the drug offense, followed by a consecutive life sentence on the firearm offense. On direct appeal, we affirmed. Thompson then filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. The district court[2] denied the motion, but granted a certificate of appealability.

## I. Background

The facts underlying Thompson's conviction are set forth in our prior opinion, United States v. Thompson, 770 F.3d 689 (8th Cir. 2014). We repeat those facts here as relevant for the instant appeal. The day before his trial was to begin, Thompson notified the court that he intended to plead guilty. The proposed plea agreement was provided to the court for review. As pertinent here, the proposed agreement set forth the mandatory statutory minimum and maximum penalties for both counts to which Thompson agreed to plead guilty, and noted that the court would impose "a sentence sufficient to comply with the purposes set forth in the Sentencing Reform Act . . . consider[ing] factors set forth in 18 U.S.C. § 3553(a)" after consulting and taking into account the sentencing guidelines. The agreement stated that it was binding on the United States Attorney for the District of North Dakota, but not on the court or the probation office, and that the court could "depart from the applicable guidelines range if the Court, on the record, states factors not contemplated by the Sentencing Guidelines Commission to justify the departure." The only sentencing recommendation the government agreed to make was for a two-level downward adjustment for acceptance of responsibility; all other sentencing issues were left open. The written plea agreement contained an integration clause providing that "no threats,

---

[2]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

-2-

promises, or representations exist beyond the terms of this plea agreement" and that "[t]here are no additional terms to the Plea Agreement."[3]

The following morning, Thompson told the court he had changed his mind and that he intended to go to trial. The district court questioned Thompson about his decision. Thompson persisted in his stance that he wanted to go to trial, and his counsel requested a recess. Following a fifteen-minute recess, the parties reconvened, and Thompson informed the court he had decided to plead guilty. He signed the plea agreement in which he "acknowledge[d] reading and understanding all provisions of the Plea Agreement" and that he had discussed and reviewed the agreement with his attorney.

The change-of-plea hearing followed immediately. At the hearing, the court and Thompson had the following colloquy:

> THE COURT: Okay. And you understand that by pleading guilty to Count Two there is a mandatory minimum seven-year sentence that will be consecutive to the mandatory minimum five-year sentence on Count One?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And that will be the least amount that the Court could sentence you. The Court could still sentence you to a higher amount but the least that they could sentence you to is that 12 years. Do you understand that?
>
> THE DEFENDANT: Yes.

---

[3]This part of the integration clause is contained in a plea agreement supplement that is referenced in the plea agreement and that Thompson also signed and dated prior to pleading guilty.

THE COURT: Yeah, because what I'm saying is there's no way I could go below that and not violate the law, all right? Do you understand?

THE DEFENDANT: Yes.

Thompson, 770 F.3d at 692. On appeal, Thompson argued that the district court violated Federal Rule of Criminal Procedure 11 in part by improperly participating in plea negotiations. We affirmed, concluding Thompson had failed to show a reasonable probability that, but for the purported errors, he would not have entered a plea of guilty.

Thompson then filed the instant motion pursuant to § 2255, asserting the district court improperly participated in plea negotiations; he was effectively promised a twelve-year sentence; and he received ineffective assistance of counsel. With the motion, he submitted an affidavit, asserting in part as follows:[4]

> During the recess my attorney told me that it was his advice that I plead guilty. I wanted to go to trial. I specifically told the Judge twice that I wanted to go to trial. [My attorney] then told me that the Judge would most likely give me the 12 years if I pled guilty. [My attorney] went on to say that he knows Judge Erickson and that "he is a good judge." [My attorney] then told me that Judge Erickson can't directly say that he would give me the 12 years if I pled guilty, but indicated that that is what the Judge was saying.
>
> Based on Judge Erickson's statements to me in open court . . . indicating that he would sentence me to 12 years if I pled guilty, and further, based on my attorney's statements to me during the recess that the Judge would sentence me to 12 years if I pled guilty, and that I should accept the prosecutor's plea offer and plead guilty, I took my attorney's advice and pled guilty. My attorney used the Judge's statements to convince

---

[4]In its brief, the government assumes for purposes of this appeal that the facts in Thompson's affidavit are true. We do the same.

-4-

me to plead guilty. Had Judge Erickson not involved himself in the plea negotiations and made the statements that he made to me . . . I would not have pled guilty, and would have insisted on exercising my right to jury trial, as I twice told Judge Erickson . . . that going to trial is what I wanted to do. Also, [my attorney] never informed me of the law surrounding my case, including sentencing and that the Judge was not suppose[d] to involve himself in the plea negotiations.

The district court denied the motion in its entirety but granted a certificate of appealability. Thompson appeals.

## II. Discussion

As an initial matter, we address the government's assertion that we lack jurisdiction over this appeal. After Thompson appealed the denial of his § 2255 motion, the government moved our court to dismiss the appeal as untimely under Federal Rule of Appellate Procedure 4(a). An administrative panel of our court denied the motion. In its merits brief, the government renews its argument that we lack jurisdiction because Thompson failed to timely perfect his appeal.

We have an ongoing obligation to consider our own jurisdiction, but "an administrative panel's denial of a motion to dismiss for lack of jurisdiction typically is the law of the case, ordinarily to be adhered to in the absence of clear error or manifest injustice." Williams v. Emp'rs Mut. Cas. Co., 845 F.3d 891, 897 (8th Cir. 2017) (quotations omitted). "For the law of the case doctrine to have any application, however, the prior administrative panel must have actually decided the specific jurisdictional issue." Nyffeler Constr., Inc. v. Sec'y of Labor, 760 F.3d 837, 841–42 (8th Cir. 2014). Here, the specific jurisdictional issue presented to the administrative panel and to us is the same: whether Thompson's notice of appeal was timely. The record on this issue also remains the same. Seeing no "clear error or manifest injustice," we proceed to the merits of Thompson's appeal. We review de novo a

-5-

district court's denial of a motion to vacate, set aside, or correct sentence.  United States v. Hernandez, 436 F.3d 851, 854–55 (8th Cir. 2006).  We review the court's underlying factual findings for clear error.  Id. at 855.

Thompson's first argument[5] is that the district court violated Rule 11 by improperly participating in plea negotiations.  Thompson made this same argument in his direct appeal.  See Thompson, 770 F.3d at 694–95.  Though we acknowledged that "[w]hether the district court's comments constituted improper participation in plea negotiations is a close question," we nonetheless concluded that the court's comments "were isolated in nature, and an after-the-fact review of the written transcript of the colloquy between the court and Thompson may result in a tendency to give those comments more attention and weight than they received at the time."  Id. at 695–96.  We further decided that even "[a]ssuming for the sake of analysis that the district court's comments constituted improper participation in plea negotiations in violation of Rule 11," Thompson had failed to show "a reasonable probability that, but for the Rule 11 errors, he would not have pleaded guilty."  Id. at 696, 698.  "[C]laims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255."  Davis v. United States, 673 F.3d

_____

[5]Thompson raises three new issues on appeal.  First, he asserts that the district court's promise of a twelve-year sentence and the government's agreement to that promise converted the plea agreement into a binding plea agreement that the government then breached.  Next, Thompson asserts he did not enter the plea agreement knowingly and voluntarily because (1) its terms and conditions were not explained to him in a way that he understood, and (2) it was not explained to him that the terms of the plea agreement negated the oral promise—that is, a twelve-year sentence—that induced him to plead guilty.  Finally, he argues his lawyer was ineffective for failing to object at the sentencing hearing to the sentence imposed.  Because Thompson did not raise these issues with the district court in his § 2255 proceeding, they are barred.  See Abdullah v. United States, 240 F.3d 683, 685 (8th Cir. 2001) ("Generally, a habeas claim cannot be raised by a petitioner for the first time on appeal.").

849, 852 (8th Cir. 2012) (quoting Bear Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003)). Because this issue has been "raised and decided," it cannot be relitigated in these proceedings, and we decline to revisit our prior decision.

Next, Thompson argues the district court's "indication" that it would impose a twelve-year sentence, coupled with the government's failure to object, amounted to a "promise that he would receive twelve years' imprisonment." Thompson characterizes this set of circumstances as an oral promise of what his sentence would be. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled" because the government's breach of such a promise violates due process. United States v. Raifsnider, 663 F.3d 1004, 1009 (8th Cir. 2011) (quoting Santobello v. New York, 404 U.S. 257, 262 (1971)). Thompson bears the burden of showing that he was promised a twelve-year sentence and that the promise of the twelve-year sentence "was part of the 'inducement or consideration' offered by the government in exchange for his plea." Id.

Thompson concedes the plea agreement he signed prior to pleading guilty does not guarantee a twelve-year sentence, but contends the government's silence in the face of the district court's comments at the plea hearing amounted to an oral amendment of the written plea agreement. Because plea agreements are contractual in nature, we interpret them according to general contract principles. United States v. Leach, 562 F.3d 930, 935 (8th Cir. 2009). "When an alleged oral promise is made prior to, or in conjunction with, a plea agreement, such promise cannot serve as an inducement to plead guilty when the defendant's plea agreement and plea-hearing representations negate such a claim." Id. (quotation omitted). The written plea agreement did not include a stipulation to a twelve-year sentence, and no one at the plea hearing promised Thompson he would receive a particular sentence. When asked by the court whether he understood that "[t]he court could still sentence you to a higher amount but the least that they could sentence you to is that 12 years,"

-7-

Thompson responded, "[y]es." Thompson, 770 F.3d at 692. "[A] defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997) (quotation omitted). Thompson has not shown that the government's silence amounted to a promise that induced him to plead guilty.[6]

Finally, Thompson claims that his attorney provided ineffective assistance of counsel, both by advising him that the district court would "most likely give [him] the 12 years if [he] pled guilty" without explaining that the district court was not allowed to participate in plea negotiations, and by not objecting to the court's improper participation in those negotiations. We review ineffective assistance of counsel claims arising from plea negotiations under the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Regenos, 405 F.3d 691, 693 (8th Cir. 2005). "To demonstrate that counsel was constitutionally ineffective, a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." Lee v. United States, 137 S. Ct. 1958, 1964 (2017) (quoting Strickland, 466 U.S. at 688). "[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him

_____

[6]The plea agreement also contains an integration clause. "[A]n integration clause normally prevents a criminal defendant, who has entered into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself." Leach, 562 F.3d at 935–36 (quotation omitted). Thompson acknowledges the integration clause but contends that "[a]n integration clause will not . . . preclude proof of oral promises when both parties concede that the written plea agreement does not contain all of the Government's promises that induced the defendant to plead guilty." See Raifsnider, 663 F.3d at 1010 (concluding oral promise was binding despite integration clause in plea agreement because both parties agreed they orally amended the written agreement). Here, however, the government does not concede that the written plea agreement failed to list all of the government's promises that induced Thompson to plead guilty.

to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Id. at 1965 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  But, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id. at 1967.

In his affidavit, Thompson asserts that but for his counsel's deficiencies, he would not have pleaded guilty and would have insisted on taking his case to trial. Assuming without deciding that counsel's advice to plead guilty based on the likelihood of a twelve-year sentence amounts to deficient performance, we conclude Thompson has failed to show the required prejudice.  With the benefit of hindsight, Thompson's statement that he would have not pleaded guilty under these circumstances has a ring of truth, especially in light of the sentence he received.  But we must "look to contemporaneous evidence to substantiate" that statement, and the evidence we find is substantially to the contrary.  At the change of plea hearing, which immediately followed the recess where counsel provided allegedly deficient advice, the district court discussed the terms of the plea agreement with Thompson. The court explicitly told Thompson that the minimum sentence he could receive was twelve years, but that he could still be sentenced to a longer term.  Thompson said he understood.  When asked, Thompson also agreed that the court did not force him to enter the plea agreement and that he was doing so of his "own free will."  See Thompson, 770 F.3d at 697–98 (recognizing "Thompson told the district court three times he wanted to go to trial," but also noting Thompson's failures to object to the recommended sentencing range in presentence report or his status as a career offender; to move to withdraw his guilty plea; to indicate at sentencing that he anticipated a particular sentence; or to raise at the district court any concerns about possible Rule 11 errors).

Thompson's affidavit offers little more than a "*post hoc* assertion" regarding his decision to plead guilty.  See Lee, 137 S. Ct. at 1967.  It is void of any actions Thompson took or statements he made, before, during, or after sentencing, that would demonstrate a reasonable probability that he would not have pleaded guilty had his lawyer not given the advice that he did.  We again recognize that "Thompson understandably hoped for a sentence of less than life imprisonment after pleading guilty and waiving his right to trial." Thompson, 770 F.3d at 698.  But Thompson has failed to point to sufficient contemporaneous evidence to support his *post hoc* assertion that he would not have pleaded guilty absent his attorney's advice. Without such evidence, his ineffective assistance of counsel claims must fail.

### III. Conclusion

For the reasons set forth above, we affirm the district court's denial of Thompson's § 2255 motion.

_____