# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1112
_____

United States of America

*Plaintiff - Appellee*

v.

Douglas James Schneider

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: June 14, 2022
Filed: July 20, 2022
_____

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.
_____

BENTON, Circuit Judge.

According to the government, in 2018, Douglas J. Schneider drove his stepdaughter from their home in North Dakota to Montana with the specific intent of engaging in sexual acts with her—one of many instances of Schneider's sexual abuse of her from age 7 to 11.

In February 2021, Schneider and the government reached a binding plea agreement: Schneider would plead guilty to transportation of a minor in violation

of 18 U.S.C. § 2423(a) and receive a below-guideline sentence of 150 months. At a change-of-plea hearing in March, the district court rejected the plea agreement:

> Well, I'm not going to accept this binding plea agreement. Mr. Heck, your client can either have the three points or he can take it to trial. And I will tell you this, I'll sentence him within the guideline range, but he's not going to get a 15-year sentence for this type of conduct, particularly involving somebody in his care.

The government asked if the parties could submit a future plea agreement informally. The district court answered, "I'm okay with that. And as I indicated, I'll sentence him within the guidelines under a 37—so we're looking at 210 to 262 months—but he's not going to get 15 years. He's going to get more than that."

In July, the parties reached a second plea agreement. It was nonbinding: in exchange for Schneider's guilty plea, the government would recommend a sentence of 210 months—the lower limit of the guideline range as calculated by the district court during the first hearing. In September, the district court held a second change-of-plea hearing to evaluate Schneider's understanding of the agreement:

> THE COURT: I see that the Plea Agreement is nonbinding. Do you know what that means?
>
> THE DEFENDANT: Yes. That you can accept it and that you don't have to accept it as written.
>
> THE COURT: Well, what it means is that you and your attorney and the government are going to give me some recommendations as far as the amount of time that you want—will—should receive for this criminal violation for prison time, and I can do what I want; what they suggest is not binding on me in any way. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: So what you and your attorney have talked about, I can throw that out the window and sentence you to the max, maximum amount of time, that the law will allow. And if that occurs, you're stuck

with your change of plea. So this is a do-or-die moment; if you change your plea today, you can't go back. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

The district court also confirmed that Schneider was aware of the maximum sentence:

> THE COURT: Paragraph 7 sets out the maximum penalty for a plea of guilt or a finding of guilt by a judge or jury with regard to Count One of the Indictment. Do you understand, sir, with regard to a plea of guilty, if you enter that here, that I can imprison you for any amount of years up to the rest of your life?
>
> THE DEFENDANT: Yes, Your Honor.

At the end of the second hearing, the district court accepted Schneider's guilty plea.

In December, a pre-sentence report was prepared. The PSR calculated a guideline range of life, due to a 2-level enhancement for undue influence and a 5-level enhancement for pattern of activity involving prohibited sexual conduct with minors. *See* **U.S.S.G. § 2G1.3(b)(2)(B)**, **U.S.S.G. § 4B1.5**. Schneider objected to the PSR but did not move to withdraw his guilty plea.

In January 2022, at the sentencing hearing, Schneider's counsel urged the court to impose a sentence within the range discussed at the first change-of-plea hearing:

> . . . the guideline range, based on what it came back at, as [the prosecutor] indicated, wasn't contemplated at the time that it would end up at life. I think that just—I'm not trying to throw any quotes back from the Court either from the first plea hearing, but I don't think any party involved at that time anticipated that guideline range; and the Court at paragraph 12 of the initial plea hearing noted that, and I think Mr. Schneider was in part relying on that he'd be sentenced under a 37 looking at 210 to 262 months . . . . And in light of that, we would request that the Court proceed with a range consistent with the Plea Agreement

-3-

and consistent with the Sentencing Guideline range discussed at the end of the initial plea hearing with a 210 to 262 months understanding what the guidelines came back at.

The district court imposed a sentence of life without the possibility of parole: "As per the Court's recitation of the sentencing expectation, the Court is not bound by the sentencing expectation that was presented to the Court at the time. The Court indicated it would give Mr. Schneider a guideline sentence and that's what I will do today."

Schneider appeals, arguing that the district court participated in plea negotiations in violation of Rule 11(c)(1) of the Federal Rules of Criminal Procedure, requiring vacatur of his conviction and sentence. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

The government argues that Schneider waived his right to appeal. "Whether a valid waiver of appellate rights occurred is a question of law that we will review de novo." *United States v. Haubrich*, 744 F.3d 554, 556 (8th Cir. 2014).

A defendant's right to appeal is statutory, not constitutional, and may be waived. *United States v. Andis*, 333 F.3d 886, 889 (8th Cir. 2003) (en banc), *quoting Abney v. United States*, 431 U.S. 651, 656 (1977). This court "must confirm that the appeal falls within the scope of the waiver and that both the waiver and plea agreement were entered into knowingly and voluntarily." *Id.* at 889-90.

In the second plea agreement, Schneider waived "all rights to appeal or collaterally attack . . . [his] conviction or sentence [and] all non-jurisdictional issues." Because Schneider's appeal requests vacatur of his conviction and sentence, it falls within the scope of the waiver.

However, a violation of Rule 11(c)(1) is appealable unless the defendant specifically waives "an appeal challenging the voluntariness of his plea." *United States v. Thompson*, 770 F.3d 689, 694 (8th Cir. 2014). The plea agreement in *Thompson* said: "By signing this agreement, defendant voluntarily waives defendant's right to appeal the Court's judgment against defendant . . . . Defendant reserves only the right to appeal from a sentence that is greater than the upper limit of the Court-determined Sentencing Guidelines range." Plea Agreement, *United States v. Thompson*, No. 3:12-cr-00029, DCN 71 at 11 (N.D. Oct. 4, 2012), *available in* Appellee's Br., *United States v. Thompson*, 2013 WL 2318007 at *21 (8th Cir. 2013). The defendant appealed his conviction and sentence, claiming Rule 11 violations. This court did not enforce the waiver: "Thompson specifically argues . . . that as a result of the alleged Rule 11 violations, both his guilty plea and appeal waiver were not entered into knowingly and voluntarily. Because Thompson did not waive an appeal challenging the voluntariness of his plea, we address his arguments." *Thompson*, 770 F.3d at 694.

Schneider's waiver of appellate rights is like the waiver in *Thompson*—it does not specifically "waive an appeal challenging the voluntariness of his plea." *Id.* Schneider did not waive his right to this appeal.

## II.

Because Schneider did not object before the district court, his Rule 11 argument is subject to plain error review. *See United States v. Foy*, 617 F.3d 1029, 1034 (8th Cir. 2010) ("Instances of noncompliance with Rule 11 may be raised for the first time on appeal, but our review is for plain error."). Schneider must show that the district court committed an error, which is plain, which affected his substantial rights, and failure to correct the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Todd*, 521 F.3d 891, 896 (8th Cir. 2008), *citing United States v. Olano*, 507 U.S. 725, 732 (1993).

## A.

"Rule 11 governs pleas, and among other things, prohibits judicial involvement in plea negotiations with criminal defendants, stating that '[t]he court must not participate' in plea discussions." *United States v. Nesgoda*, 559 F.3d 867, 869 (8th Cir. 2009), *quoting* **Fed. R. Crim. P. 11(c)(1)**. This court has "strictly construed the rule to require an absolute prohibition upon district court participation in plea negotiations." *Id.* "Under Rule 11, the judge's role is 'limited to acceptance or rejection of agreements after a thorough review of all relevant factors.'" *Thompson*, 770 F.3d at 695, *quoting* **United States v. Gallington**, 488 F.2d 637, 640 (8th Cir. 1973).

The government likens this case to *Nesgoda*, where the district court "merely explained the effect of the terms already on the table" without "inject[ing] [its] own terms into the plea agreement." *Nesgoda*, 559 F.3d at 869 (alterations added).

However, this case is more like *Thompson*. The plea agreement there reduced the drug quantity charged in exchange for a guilty plea to two counts. *Thompson*, 770 F.3d at 690. The reduction lowered the statutory minimum sentence to 12 years; the maximum sentence remained life. The day before trial, Thompson notified the district court he would accept the plea agreement. *Id.* at 691. The next morning, however, Thompson stated he had changed his mind and wanted a trial. The district court told Thompson that he was "engaging in a 'high-risk strategy [ ] because on one hand you've got 12 years,' and '[y]ou're a young enough man that it seems probable that you will be able to serve that sentence and walk out of prison someday, all right?'" *Id.* at 695. After a 15-minute recess, Thompson decided to take the plea agreement. *Id.* at 692. The district court sentenced him to the statutory maximum of 480 months on the first count, and a consecutive statutory maximum of life on the second count. *Id.* at 693. Thompson appealed, claiming multiple Rule 11 violations.

Because "the district court's comments suggested a sentence of 12 years was a possible outcome if Thompson entered the plea agreement and pleaded guilty," this court "[a]ssum[ed] for the sake of analysis that the district court's comments constituted improper participation in plea negotiations in violation of Rule 11, and

that the error was plain." *Id.* at 696 (alterations added). This court condemned a district court "engag[ing] itself in the negotiation of particular terms or conditions of the plea agreement" by "committing itself to a 'sentence of at least a certain level of severity,'" "telling parties what sentence it would find acceptable," or "respond[ing] favorably" to new proposals. *Id.* at 695 (alterations added), *citing United States v. Crowell*, 60 F.3d 199, 205 (5th Cir. 1995); *United States v. Kyle*, 734 F.3d 956, 964-65 (9th Cir. 2013); *and United States v. Kraus*, 137 F.3d 447, 455-57 (7th Cir. 1998).

At the first change-of-plea hearing here, the district court said, "I will tell you this, I'll sentence [Schneider] within the guideline range . . . . [A]s I indicated, I'll sentence him within the guidelines under a 37—so we're looking at 210 to 262 months . . . ." These comments did more than suggest that a sentence of 210 months was possible. They committed the court to a sentence of at least a certain level of severity and within a particular range.[1] Under *Thompson*, this is plain error. *See id.* (district court may not "engage itself in the negotiation of particular terms or conditions of the plea agreement"), *citing Crowell*, 60 F.3d at 204-05 (district court committing itself to a "sentence of at least a certain level of severity" is "precisely th[e] type of participation that is prohibited by Rule 11" (alteration added)); *Kyle*, 734 F.3d at 960 (plain error where district court told the parties it would accept a sentence "substantially above-guideline" but lower than "the statutory maximum [of life imprisonment]"); *and Kraus*, 137 F.3d at 454 ("Once the court has rejected that agreement, its license to speak about what it finds acceptable and unacceptable—to suggest an appropriate sentencing range, for example—is at an end.").

---

[1]This renders irrelevant the government's assertion: "The court's statement regarding the potential sentencing range of 210 to 262-months was not offered by the court as an 'acceptable' range"; the district court "merely offered that it would impose a within the guidelines range sentence, whatever the range may be."

Schneider must show that the district court's error affected his substantial rights. *See **United States v. Harrison***, 974 F.3d 880, 882 (8th Cir. 2020). "To show the errors affected his substantial rights in this context, [the defendant] must demonstrate a reasonable probability that but for the error, he would not have entered a guilty plea." ***Thompson***, 770 F.3d at 696 (alteration added) (quotation marks omitted), *citing **United States v. Dominguez Benitez***, 542 U.S. 74, 82 (2004).

Schneider cites other circuits' cases indicating that a Rule 11(c)(1) error necessarily affects substantial rights. *See **Kraus***, 137 F.3d at 457 ("[I]nsofar as judicial intervention in the negotiation of a plea agreement is concerned, the possibility of harmless error may be more theoretical than real."). *See also **United States v. Bradley***, 455 F.3d 453, 463 (4th Cir. 2006) ("[I]t will be rare that a clear violation of Rule 11's prohibition against judicial involvement in plea negotiations does not affect substantial rights."), *citing **United States v. Miles***, 10 F.3d 1135, 1141 (5th Cir. 1993) ("The government does not cite, nor does our research find, one instance in which a federal court has found judicial participation in plea negotiations to be harmless error.").

The cases Schneider cites were decided before the Supreme Court's decision in *United States v. Davila*, 569 U.S. 597 (2013). The Court there ruled that Rule 11(c)(1) violations are not structural error. The question presented was whether "the violation of Rule 11(c)(1) by the Magistrate Judge warranted automatic vacatur of Davila's guilty plea." ***Davila***, 569 U.S. at 600. The Court's answer: "Nothing in Rule 11's text . . . indicates that the ban on judicial involvement in plea discussions, if dishonored, demands automatic vacatur of the plea without regard to case-specific circumstances." ***Id.*** at 609. The Supreme Court emphasized that the "class of errors that trigger automatic reversal" is "very limited," and that "Rule 11(c)(1) error does not belong in that highly exceptional category." ***Id.*** at 611 (quotation mark omitted). *See also **Dominguez Benitez***, 542 U.S. at 81, n.6 ("Dominguez does not argue that either Rule 11 error generally or the Rule 11 error here is structural . . . . The argument, if made, would not prevail."); ***United States v.***

*Coleman*, 961 F.3d 1024, 1028 (8th Cir. 2020) (rejecting defendant's argument that the Rule 11 violation "'affect[ed] [his] substantial rights as a *per se* matter' and thus constitute[d] structural error that require[d] automatic reversal" (alterations added)). Courts reviewing Rule 11(c)(1) errors are to examine the "particular facts and circumstances" to determine "whether it was reasonably probable that, but for the [district court's] exhortations, [the defendant] would have exercised his right to go to trial." *Davila*, 569 U.S. at 611-12 (alterations added).

Following *Davila*, this court in *Thompson* "look[ed] at the entire record" to determine whether the defendant satisfied his burden. *Thompson*, 770 F.3d at 697, *citing Davila*, 569 U.S. at 612. Crucial to this court's analysis was the fact that the district court ensured that Thompson knew that it *could* impose a more severe sentence than the one suggested by its earlier improper comments:

> [E]vents on the day Thompson pleaded guilty . . . indicate . . . that the Rule 11 errors [did not] influence his decision to plead guilty . . . . [H]e was informed of th[e] fact . . . [that] he still faced a possible sentence of life imprisonment . . . in the plea agreement he signed in open court at the hearing. The court discussed the plea agreement with him at the hearing, and Thompson stated under oath he understood the maximum and minimum penalties he faced if he pleaded guilty or was convicted after trial . . . . As for Thompson's assertion that "the court['s comments] caused him to believe he might be sentenced to only 12 years," the district court expressly told Thompson that his sentence could be longer: "The Court could still sentence you to a higher amount but the least that they could sentence you to is that 12 years."

*Id.* at 696-97 (alterations added). Based on this colloquy, this court found no reasonable probability that, but for the Rule 11 errors, Thompson would not have pled guilty. *Id.* at 698, *citing Todd*, 521 F.3d at 896 (defendant could not show that his substantial rights were affected because "[a]lthough [he] may have begun the plea hearing under the belief that he would be sentenced to a term of five years' imprisonment" due to a plain error under Rule 11, "the district court made clear at two different points in the hearing that the sentence could be 'harsher' than, and 'far in excess' of, five years' imprisonment").

At the second change-of-plea hearing here, the district court confirmed that Schneider was aware that the agreement's recommendations were not binding, that the district court could impose a sentence above the range it calculated at the first change-of-plea hearing, and that the maximum sentence was life. While Schneider may have hoped for a sentence within the range discussed at the first hearing, this colloquy shows that he knew the "plea agreement he entered offered that possibility, but not that guarantee." *Id.* Because Schneider repeatedly acknowledged that the district court could impose a life sentence despite its comments at the first change-of-plea hearing, he has failed to show a reasonable probability that he would not have pled guilty but for those comments. *Id.* at 696, *citing **Dominguez Benitez**,* 542 U.S. at 82.

Schneider stresses that his case is distinguishable from *Thompson* because he mentioned his reliance on the district court's improper comments at sentencing. *Compare id.* at 698 ("[E]ven during the sentencing hearing, Thompson failed to give any indication that the district court had lead [sic] him to expect a particular sentence in exchange for pleading guilty.") *with* Transcript of Sentencing Hearing, **United States v. Schneider**, No. 1:19-cr-00124, DCN 48 at 39 (N.D. Jan. 18, 2022) ("I think Mr. Schneider was in part relying on that he'd be sentenced under a 37 looking at 210 to 262 months . . . . And in light of that, we would request that the Court proceed with a range consistent with the Plea Agreement and consistent with the Sentencing Guideline range discussed at the end of the initial plea hearing . . . .").

While this distinction does favor Schneider, other factors discussed by *Thompson* do not. Temporal proximity favored the defendant in *Thompson*. **Thompson**, 770 F.3d at 696-97 ("Thompson told the district court three times he wanted to go to trial. After a brief recess, Thompson informed the court he wanted to plead guilty. The plea hearing immediately followed. The temporal proximity between a court's improper participation in plea negotiations and a plea hearing is a circumstance that may support a finding of prejudice."). In this case, six months passed between the court's improper participation (at the first change-of-plea hearing in March) and Schneider's guilty plea (at the second change-of-plea hearing in September).

Other factors that favored affirmance in *Thompson* also favor affirmance here. The second plea agreement offered Schneider the benefit of a recommended sentence at the bottom of the expected guideline range. *Id.* at 697 ("[W]e note that at the time he entered it, the plea agreement did offer Thompson a benefit: a lower mandatory minimum sentence on Count 1, and the opportunity to receive less than a mandatory life sentence on Count 2."). And like Thompson, Schneider did not move to withdraw his guilty plea after the PSR calculated a higher guideline range. *Id.* at 698 ("And, significantly, Thompson never sought to withdraw his guilty plea, because of Rule 11 errors or for any other reason, even after he received a copy of the PSR.").

Another consideration in *Thompson* was the defendant's ability to use the Rule 11 violation to obtain multiple bites at the apple. *See **Thompson***, 770 F.3d at 698 ("Thompson understandably hoped for a sentence of less than life imprisonment after pleading guilty and waiving his right to trial. The plea agreement he entered offered that possibility, but not that guarantee."). This case illustrates the potential for abuse of a structural-error approach to Rule 11(c)(1): if the defendant finds the sentence suggested by the improper comments unacceptable, he could object and get reassignment; if the suggested sentence is acceptable, the defendant could not object and hope the court imposes the suggested sentence; if the court imposes a higher sentence, the defendant could appeal and get vacatur, remand, and reassignment. *See also **Todd***, 521 F.3d at 897 ("[I]t was only after the district court imposed a sentence far in excess of five years (as it cautioned was possible), and Todd recognized that his plea agreement did not produce the benefit for which he had hoped, that Todd sought to set aside his guilty plea based on non-compliance with Rule 11. Accordingly, we conclude that relief is not warranted.").

Although at least one factor favors Schneider, the particular facts and circumstances in the entire record here do not show that the Rule 11 violation affected Schneider's substantial rights. *See **Thompson***, 770 F.3d at 696 (defendant's substantial rights not affected even though one factor "suggest[ed] that the Rule 11 errors may have influenced his decision to plead guilty" (alteration added)). *Accord **United States v. Davila***, 749 F.3d 982, 995 (11th Cir. 2014) ("several factors . . .

-11-

convinced us that, in light of the whole record, [the defendant] had failed to meet his burden" of showing that he would not have pled guilty but for the Rule 11(c)(1) violation, despite one factor "tend[ing] to suggest that the remarks precipitated the plea" (alterations added)), *describing* **United States v. Castro**, 736 F.3d 1308, 1314 (11th Cir. 2013); **United States v. Ushery**, 785 F.3d 210, 222 (6th Cir. 2015) ("two potentially negative factors" indicating that the defendant would not have entered a guilty plea but for the Rule 11(c)(1) violation were "substantially neutralized" by other facts and circumstances).

\* \* \* \* \* \* \*

The judgment is affirmed.

GRUENDER, Circuit Judge, concurring in part and concurring in the judgment.

I agree with the court that Schneider cannot establish that the alleged Rule 11(c)(1) error by the district court affected his substantial rights. However, as the court did in *United States v. Thompson*, I would "[a]ssum[e] for the sake of analysis" that there was a plain error. *See* 770 F.3d 689, 696 (8th Cir. 2014). It is not necessary to decide this question, and our decision in *Thompson* does not support a finding of plain error in this case. In the absence of decisions of this court supporting a finding of plain error under these circumstances, I am reluctant to adopt out-of-circuit precedent on the question where it is not necessary to resolve the case before us.

_____